FOURTH DIVISION

No. 1-09-3296

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CH 16976 |
| | ) | |
| LEXINGTON INSURANCE COMPANY, | ) | Honorable |
| | ) | James R. Epstein, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Lavin concurred in the judgment and opinion.

**OPINION**

This appeal arises from an insurance coverage lawsuit in which plaintiff, Federal Insurance Company (Federal), sought to recover from defendant, Lexington Insurance Company (Lexington), settlement payments made by Federal on behalf of its insured in a personal injury action. The circuit court held that the insured's failure to comply with the "Notice of Circumstance" provision precluded coverage under the Lexington policy and granted summary judgment in favor of Lexington. On appeal, Federal contends the circuit court erred in granting summary judgment to Lexington because sufficient notice was provided as outlined in the insurance policy. We affirm.

We adopt the facts as outlined in the judgment of the circuit court.

In October 1998, Jose Barajas was seriously injured by a detonator manufactured by the Ensign-Bickford Company (Ensign) and sold by American East Explosives, Inc. (American East). American East, doing business then as Evenson Explosives, is a subsidiary of ETI Canada, Inc.

1

(ETI). At the time of the accident, American East and Ensign were insured by National Union Fire Insurance Company (National Union). Defendant Lexington was their excess carrier from November 29, 1997, through November 29, 1998, and plaintiff, Federal, provided excess coverage from November 29, 1998, through November 29, 1999.

On April 18, 2000, Barajas and his spouse filed suit against American East, Ensign, and others, for his injuries. National Union agreed to defend American East and Ensign, and Federal agreed to provide excess coverage. Lexington refused to participate, contending the Barajas claim was not covered under its policy. Once the Barajas litigation settled, Federal filed the instant lawsuit seeking to recover its portion of the settlement from Lexington.

The parties filed cross-motions for summary judgment on Federal's four-count complaint for declaratory relief, indemnification, breach of contract damages, and contribution. The circuit court granted Lexington summary judgment on the four-count complaint and denied summary judgment to Federal. Federal filed this timely appeal.

At issue is the notice of circumstance in Lexington's policy:

"Whenever the Insured has information relating to a Circumstance which is likely to involve this Policy and gives notice of such Circumstance, *in writing, sent by registered or certified mail during the period of this Policy, to the entity designated in Item 4 of the Declarations*, then any claim, as respects such Circumstance, which is made, in writing, against the Insured within seven years from the date of the written notification of such Circumstance, to said entity, shall be deemed to have been first made, in writing, against the Insured on the date upon which the notice of the said Circumstance was first sent to

said entity, in writing.

It is noted that this Insuring Agreement 4 is an option for the Insured and not an obligation and does not alter the provisions of Condition (D)-REPORTING OF LOSSES." (Emphasis added.)

Willis Corroon Corporation of Seattle (Willis) is the entity designated in Item 4. At the time of the Barajas accident, Willis also was American East's broker in charge of handling all of American East's general and auto liability claims and the reporting of all those after being notified.

It is undisputed American East did not provide Willis with written notification of the Barajas incident. American East's administrative and risk manager, Carl Clauss, did telephone Willis's representative, Stanley Heydrick, on the day of the incident or the day after and notified him of the incident. Heydrick does not remember requesting written notice of the Barajas accident, but believes he forwarded the Barajas information to Mr. Jim Sorte in the claims department, which then put National Union, the primary insurer, on notice.

The learned trial court correctly stated the standard. "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment should be granted only where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 468 (2006). While summary

3

judgment may aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). When parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). Our review is *de novo*. *Steadfast Insurance Co.*, 359 Ill. App. 3d at 755.

A proper analysis of the sufficiency of notice is whether the notice given objectively complied with the potential claim notice provision of a policy. *Continental Casualty Co. v. Coregis Insurance Co.*, 316 Ill. App. 3d 1052, 1063 (2000).

On appeal, Federal contends the notice was sufficient because: (1) there was oral notice by telephone the next day that was intended as notice; and (2) notice by fax to AIG Claim Services, Inc. (AIG/CS) was sufficient written notice as Lexington, National Union and AIG/CS are all part of the American International Group, Inc. (AIG) corporate group.

We disagree. Mr. Clauss testified at his deposition in pertinent part:

"Q. At the time ETI provided notice of or notified Willis of the Barajas accident, did you understand that there was a possibility that Mr. Barajas's injuries would result in a claim against ETI or one of its subsidiaries?

A. No.

Q. And why do you say that?

A. Because we sold product to a customer that did their own blasting. The

4

product was loaded in the hole by Material Service's employees. Therefore, the only way that ETI should have been involved in the litigation or in the claim would be if it was deemed that the product was defective and that was one of the results of why the accident occurred.

Q. Okay. A day after the accident occurred, was it known whether the product was deemed defective?

A. No.

Q. So is it fair to say that Willis was notified of the Barajas accident in case the product involved in the Barajas accident was deemed defective?

A. That was always the prudent thing to do.

* * *

Q. When notice was provided to Willis of the Barajas accident, did you intend to put all carriers on notice of the incident?

***

A. That would have been Willis's decision.

Q. Was it your understanding that Willis would put the carriers on notice of the Barajas incident?

***

A. I feel that they did the right thing, which was notify [National Union] [which] had a million dollars' worth of coverage since I didn't expect it to be a claim."

Further, Willis's claims representative, Jim Sorte, testified in his deposition in pertinent

5

part:

"Q. [D]id you in your capacity with Willis in 1998/1999, in those years, did you have the authority to unilaterally decide to put an ETI excess insurer on notice of an incident or claim without first discussing it with Mr. Clauss?

***

A. No.

Q. Would it be fair to say that before anyone at Willis with respect to the ETI account could put an excess insurer on notice of an incident, occurrence or claim, Willis first needed the approval and authority of Mr. Clauss to do so?

***

A. Yes.

Q. Did Mr. Clauss on October 13 of 1998 or at any time ever ask you to put Lexington on notice of the Barajas case under the Lexington claims-made excess policy in effect between November of 1997 and November of 1998?

A. I don't believe so, no."

This testimony reveals that Mr. Clauss did not instruct Willis to put Lexington on notice of the Barajas claim; rather, he left it to Willis to figure out which carrier to notify. Mr. Clauss further stated he believed Willis did the "right thing" in notifying National Union (and not the excess carrier Lexington) because Mr. Clauss did not expect a claim to be made.

On this record, there simply is no evidence that American East notified Willis, either by telephone or in writing, that it should put Lexington on notice of the Barajas accident.

6

Accordingly, the circuit court was correct in finding that American East failed to comply with the notice of circumstance provision of the Lexington policy.

Federal contends Lexington received notice of the Barajas incident through an "Acord General Liability Notice of Occurrence Claim" (the Acord) Willis sent by fax to AIG, which was received by AIG/CS on October 14, 1998. Federal argues that Lexington and National Union are both AIG member companies, and that AIG/CS accepts notices from brokers or policyholders on behalf of Lexington and National Union. Federal contends this court should find, as a matter of law, that notice to AIG, AIG/CS, or National Union constituted notice to Lexington.

We disagree. The Acord referenced only National Union, not Lexington. The Acord contained a section allowing identification of an "umbrella/excess policy in force"; however, this section was left blank by Willis. As aptly noted by the circuit court, "Merely because National Union fortuitously belonged to the same organization as Lexington does not impute notice of the Barajas incident to Lexington. Moreover, there is not even any evidence suggesting that the sender of the Acord intended to notify anyone other than National Union, the only insurer identified therein, of the Barajas incident."

Federal also argues:

"The Lexington Policy's Other Insurance provision conflicts with the Federal Policy's Other Insurance provisions because both policies purport to make their insurance excess of all other applicable insurance. Since the Other Insurance provisions are mutually repugnant, this Court should disregard them, and require both insurer[s] to contribute on a *pro rata* basis, which [in] this case would require Lexington to reimburse Federal for one-

7

half of the settlement of the Barajas lawsuit, plus interest."

Federal's argument is unavailing. As discussed above, Federal is not entitled to any reimbursement from Lexington due to the insured's failure to comply with the notice of circumstance provision of the Lexington policy.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

No 1-09-3296

FEDERAL INSURANCE COMPANY,

       Plaintiff-Appellant,

v.

LEXINGTON INSURANCE COMPANY,

       Defendant-Appellee.

No. 1-09-3296

Appellate Court of Illinois
First District, Fourth Division

January 3, 2011

JUSTICE O'BRIEN delivered the opinion of the court.

GALLAGHER, P.J., and LAVIN, J., concur.

Appeal from the Circuit Court of Cook County.

Honorable James R. Epstein, Judge Presiding.

For APPELLANT, Tressler, LLP, Chicago, IL (Todd S. Schenk, Amber C. Coisman, of counsel)

For APPELLEE, Donohue Brown Mathewson & Smyth LLC, Chicago, IL (Norman J. Barry, Jr., Karen Kies DeGrand, Christopher J. Rados, of counsel)