SECOND DIVISION
December 12, 2006

No. 1-05-2594

| | | |
|---|---|---|
| CAROL SCHROEDER, Executor of the Estate | ) | Appeal from the |
| of Charles Schroeder, Deceased, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | Honorable |
| NORTHWEST COMMUNITY HOSPITAL, | ) | Gay-Lloyd Lott, |
| TODD LEVERENTZ, KENNETH CRANE, | ) | Judge Presiding. |
| DAVID SAGER, LADONNA KOZIEL, and | ) | |
| AZZA S. SULEIMAN, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County which granted summary judgment in favor of defendant Northwest Community Hospital (Northwest) and against plaintiff, Carol Schroeder, executor of the estate of Charles Schroeder, deceased, in a medical malpractice/wrongful death action.

Plaintiff's decedent, Charles Schroeder, suffered from rheumatoid arthritis and was admitted for treatment as an inpatient at Northwest in December 1998, May 1999, and October 1999. During these hospitalizations he was under the care and treatment of codefendant Todd Leverentz, M.D., his primary care physician, as well as several consulting physicians: codefendants Kenneth Crane, David Sager, Ladonna Koziel, and Azza S. Suleiman. During these hospitalizations decedent was administered the drug methotrexate, which is an antimetabolite used

in the treatment of adult rheumatoid arthritis.  Methotrexate is contraindicated for patients who are in severe renal failure and on hemodialysis because they require functioning kidneys in order to eliminate the drug from their bodies.  If a patient who is in severe renal failure is administered methotrexate, toxic levels of the drug will build up in his body, resulting in serious complications.  It is undisputed that methotrexate was contraindicated for Charles because he was on hemodialysis and in severe renal failure.

Charles died at age 53 on November 6, 1999.  On November 5, 2001, plaintiff, Carol Schroeder, as executrix of her husband's estate, filed a six-count medical malpractice/wrongful death complaint against Northwest, Dr. Leverentz, and the consulting physicians.  Count I of the complaint sought production of decedent's medical records.  However, since those records were subsequently produced, that count has been rendered moot.  Count II alleges medical malpractice against Dr. Leverentz.  Counts III and IV allege medical malpractice by the physicians who participated in the care and treatment of decedent as consultants at the request of Dr. Leverentz.  And counts V and VI seek recovery from Northwest under the theory of *respondeat superior* pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2004)) and the survival statute (755 ILCS 5/27-6 (West 2004)).  Count V seeks to hold Northwest vicariously liable under the theory that the named physicians were either its actual or apparent agents.  Plaintiff's theory of recovery is that Northwest and codefendants negligently administered methotrexate to decedent even after he exhibited signs of methotrexate toxicity, which caused him to develop lymphoma.

On February 4, 2002, plaintiff filed a physician's affidavit pursuant to section 2-622 of the

1-05-2594

Code of Civil Procedure (735 ILCS 5/2-622 (West 2004)), which reads in pertinent part:

> "I am a licensed physician board-certified in internal
> medicine, specializing in the practice of rheumatology and familiar
> with the issues raised in the matter of Charles Schroeder. I have
> reviewed the medical records of Northwest Community Hospital,
> Northwest Suburban Medical Group, and Rheumatic Disease
> Center Physicians. Based on my review of the records and my
> knowledge, training and experience, Dr. Leverentz, Northwest
> Community Hospital and the physicians caring for Mr. Schroeder
> during his various hospitalizations after he developed renal
> insufficiency eventually requiring dialysis failed to meet the standard
> of care regarding administration of the drug methotrexate.
> Specifically, methotrexate was given to Mr. Schroeder when it was
> contraindicated due to his severe renal insufficiency, the need for
> dialysis, and various signs and symptoms of methotrexate toxicity.
> As a result of the failure to meet the applicable standard of care,
> Mr. Schroeder developed lymphoma caused by immunosuppression
> due to methotrexate[.] [E]ven after this diagnosis was reached, the
> methotrexate was continued. As a result, the lymphoma
> metastasized and Mr. Schroeder died on November 5, 1999 despite
> discontinuation of the drug[,] administration of leukovorin, and

1-05-2594

chemotherapy."

Following extensive discovery, Northwest filed a motion for summary judgment on the grounds that it should be dismissed from the action with prejudice because the codefendant physicians were not its actual or apparent agents but were, in fact, independent contractors. Attached to the motion were the three universal consent forms signed by plaintiff and decedent. Each time decedent was admitted in December of 1998 and May and October of 1999, either he or his wife initialed and signed a consent form. This one-page document contained six sections pertaining to (1) a general consent for treatment, (2) a disclosure statement, (3) a release of responsibility for valuables, (4) an assignment of insurance benefits, (5) a payment guarantee, (6) and an acknowledgment. Item 2 of the consent form, which was the subject of defendant's motion for summary judgment, states in pertinent part:

> "Item 2 disclosure Statement: Your care will be managed by your
>
> personal physician or other physicians *who are not employed by*
>
> *Northwest Community Hospital* or Northwest Community Day
>
> Surgery Center but have privileges  to care for patients at this
>
> facility**.**  Your physician's care is supported by a variety of
>
> individuals employed by Northwest Community Hospital or
>
> Northwest Community Day Surgery Center, including nurses,
>
> technicians and ancillary staff.  Your physician may also decide to
>
> call in consultants who practice in other specialities and may be
>
> involved in your care.  Like your physician, those consultants have

privileges to care for patients at this facility*, but are not employed*

*by Northwest Community Hospital* or Northwest Community

Day Surgery Center**."** (Emphasis added.)

Item 6 of the consent form entitled "Acknowledgment" reads:

"Upon signing this form, I acknowledge that I have read and

understood the foregoing and accept its terms."

It is undisputed that decedent signed the consent forms on December 21, 1998, and May 13, 1999, at the time of his admissions to the hospital, and his wife, plaintiff, signed the consent form on his behalf at the time of his last admission on October 20, 1999, although there is no explanation or evidence in the record as to why he did not sign the form on that occasion.

Plaintiff's response to the motion for summary judgment was twofold. First, she maintained that even if defendant's argument about apparent agency was correct, the motion should still be denied as a matter of law because there was sufficient evidence for a jury to find that the hospital, through its nurse employees, violated the standard of care by administering methotrexate to the decedent, which their training and the hospital's own drug reference materials told them was contraindicated for and dangerous to him. In support of her response, plaintiff submitted the deposition transcript of a nurse employed by Northwest at the time of decedent's hospitalization and the affidavit of a registered nurse who is experienced in the relevant area of nursing and familiar with the applicable standard of care.

Deborah Hattendorf, R.N., who had been employed by Northwest as a staff nurse, care coordinator, and transition specialist for 17 years, testified during her deposition that she was the

care coordinator for the unit where decedent was hospitalized. Although she did not provide hands-on care for the patients, she worked with the assigned nurse and the physician in assessing the patients. She further testified that giving medication to patients is the responsibility of the nurse who is assigned to a patient, and a nurse who actually administers a drug is required to know the reason for giving it, be aware of its risks and side-effects, and know whether it is contraindicated for that particular individual. She further testified that there were resources available to the nurses with respect to medications, *i.e.*, a Physician's Desk Reference and Micromedex, which is an on-line resource. If she found an order for a drug which she knew was contraindicated for a patient, she would instruct the nurse to hold the drug, discuss the matter with the pharmacist or the physician, or direct the nurse assigned to that patient to do so. If the issue cannot not be resolved that way, she would go to the nursing administrator or the clinical director with the problem and leave it up to that person. Nurse Hattendorf acknowledged in her deposition that methotrexate was ordered by the physician and given to decedent by a nurse on her unit even though he was on hemodialysis; and although she signed off on that order, she did not remember if she consulted Micromedex to determine if the drug was contraindicated for him. At some point, however, she did consult Micromedex and learned that it is contraindicated for patients who are in severe renal failure and on hemodialysis.

Plaintiff also submitted the affidavit of Mary Modjeski, a registered nurse who is licensed in the State of Illinois, experienced in the care of patients on a medical-surgical service, and familiar with the applicable standard of care for nurses who provided such care in 1999. Nurse Modjeski attested that after reviewing the policies and procedures of Northwest, its medical

records, the printout of the Micromedex information on methotrexate, and the deposition

testimony of nurse Hattendorf, it was her opinion that the nurses at Northwest who administered

the drug to Charles Schroeder violated the applicable standard of care. She further attested that

the nurses who cared for him in October 1999 were required to know that he (1) had kidney

failure; (2) was on renal dialysis; (3) that methotrexate was contraindicated for him; and (4) they

should have held the drug and discussed the problem with the ordering physician and pharmacy

and, if necessary, involved the nursing care coordinators, who would have alerted nursing

management.

Based upon this evidence, plaintiff argued there was sufficient evidence for a jury to find

that the nurses employed at Northwest violated the applicable standard of care by administering a

drug they knew or should have known was contraindicated for decedent.

The second part of plaintiff's response was that the evidence established a genuine issue of

material fact that the defendant physicians were the apparent agents of Northwest. Plaintiff

argued that the universal consent form which she and decedent signed was "extremely confusing"

and ambiguous because it did not state in a clear fashion that the doctors who would be caring for

decedent were not hospital employees or agents, and it could reasonably be interpreted to mean

that his personal physicians were employed by Northwest but the other unidentified physicians

who might be involved in his care were not. Additionally, plaintiff argued that the disclosure

statement was "sandwiched" in between "small print" releases of medical records and consents for

treatment, a release of responsibility for valuables, and an assignment of insurance benefits, all of

which added to the confusion, and no meaningful effort was made by the hospital to ensure that

plaintiff or decedent understood what was being disclosed to them.

Initially, in a written order, the trial court denied Northwest's motion for summary judgment. Northwest then filed a motion to reconsider. The court vacated its prior order and granted summary judgment for Northwest, basing its decision on the fact that both plaintiff and decedent signed the disclosure forms. The order further stated, "there is no claim that Plaintiff was or is unable to read and understand the [disclosure forms which were tendered to her and signed]." The court's order did not address plaintiff's argument with respect to the sufficiency of the allegations of nursing negligence. Plaintiff filed a motion to reconsider, which was denied, and pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 134(a)), the court found there was no just reason for delay of the enforcement or appeal.

Plaintiff has raised the following issues for our review: (1) whether the trial court erred in granting summary judgment where there was material evidence to support a jury finding that the nurses who were employed by Northwest committed malpractice by administering methotrexate to decedent; and (2) whether there was sufficient evidence for a jury to find that the physician defendants were the apparent agents of Northwest.

A motion for summary judgment should be granted only where the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). In determining whether there is a genuine issue as to any material fact, courts must construe the pleadings, depositions, admissions, and affidavits strictly in favor of the movant and liberally in favor of the nonmovant. Gilbert v. Sycamore Municipal Hospital, 156 Ill. 2d 511, 518 (1993). A

triable issue exists where there is a dispute as to material facts or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. Raglin v. HMO Illinois, Inc., 230 Ill. App. 3d 642, 645 (1992). The reviewing court's function is to determine *de novo* whether the judgment entered was correct as a matter of law. Cates v. Cates, 156 Ill. 2d 76, 78 (1993).

Prior to 1993, Illinois courts held that a hospital could only be vicariously liable through an agency relationship if the physician was an actual agent of the hospital. See Johnson v. Sumner, 160 Ill. App. 3d 173, 175 (1987); Greene v. Rogers, 147 Ill. App. 3d 1009, 1015-16 (1986). However, in 1993, our supreme court held that a hospital can be held vicariously liable based on an agency relationship between the hospital (principal) and a physician (agent). Gilbert, 156 Ill. 2d at 518. Gilbert held that in order for a hospital to be vicariously liable for the negligence of its physician under a doctrine of apparent authority, a plaintiff must show: (1) the hospital or its agent acted in a manner that would lead a reasonable person to conclude that the physician alleged to be negligent was an employee or agent of the hospital; (2) that the hospital had knowledge of acts of the agent which created the appearance of authority, where there were such acts, and acquiesced in them; and (3) the plaintiff acted in reliance on the conduct of the hospital or its agent, " 'consistent with ordinary care and prudence.' " Gilbert, 156 Ill. 2d at 525, quoting Pamperin v. Trinity Memorial Hospital, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 856 (1988). Liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital. Gilbert, 156 Ill. 2d at 524. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be

1-05-2594

liable. Gilbert, 156 Ill. 2d at 524.

   In order to find a hospital viacariously liable for the negligence of independent-contractor physicians, Gilbert held, a plaintiff must plead and prove the doctrine of apparent agency, which provides that a principal will be bound not only by authority the principal actually gives to another, but also by the authority that the principal appears to give to another. Gilbert, 156 Ill. 2d at 523. The supreme court explained:

> "Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. [Citations.] Where the principal creates the appearance of authority, the principal 'will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent.' " Gilbert, 156 Ill. 2d at 523-24, quoting Union Stock Yards & Transit Co. v. Malloy, Son & Zimmerman Co., 157 Ill. 554, 565, 41 N.E. 888, 891 (1895).

   In James v. Ingalls Memorial Hospital, 299 Ill. App. 3d 627 (1998), a case relied upon by defendant, the court did not find the hospital vicariously liable for the conduct of the physician. In that case, the plaintiff, who was 22 weeks pregnant, went to the emergency room because of

abdominal pain and vomiting. James, 299 Ill. App. 3d at 629. After being examined by a triage nurse, plaintiff's physician was contacted to see whether she should remain at Ingalls or be transferred to another hospital. James, 299 Ill. App. 3d at 629. Her physician gave approval for her to remain at Ingalls, whereupon she was admitted under the care of an obstetrician and gynecologist with staff privileges at the hospital. James, 299 Ill. App. 3d at 629. Shortly after her admission, the plaintiff signed a consent form, which stated:

> "The physicians *** on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners who have been permitted to use its facilities for the care and treatment of their patients. *** I have had the opportunity to discuss this form, and I am satisfied I understand its contents and significance. I may withdraw my consent at any time." James, 299 Ill. App. 3d at 629.

In finding the hospital was not vicariously liable, the court stated that the physician's independent contractor status was "clearly set out in the consent to treatment form, which [the plaintiff] signed." James, 299 Ill. App. 3d at 633. The court stated that: "Certainly having the patient sign a consent for treatment form which expressly states that 'the physicians on staff at this hospital are not employees or agents of the hospital' may make the proving of this element extremely difficult." James, 299 Ill. App. 3d at 633. The court further noted that while it did not hold that the existence of an independent contractor disclaimer in a consent form is always dispositive on the issue of holding out, "it is an important factor to consider." James, 299 Ill.

- 11 -

1-05-2594

App. 3d at 633.

In <u>Churkey v. Rustia</u>, 329 Ill. App. 3d 239 (2002), another case upon which defendant relies, the Second District found in favor of the hospital on a motion for summary judgment based upon the fact that the plaintiff, prior to her nasal surgery, signed a consent form that stated in relevant part:

> "I understand that Sherman Hospital uses independently contracted physicians and physician's [*sic*] groups to perform specific services such as Anesthesia and Radiological services for the hospital and its patients. The physicians are not employees of Sherman Hospital but have been granted privileges to practice at the institution, and if that is the case, I can expect to receive a separate bill from these physicians or physician groups." <u>Churkey</u>, 329 Ill. App. 3d at 241.

The <u>Churkey</u> court stated that plaintiff's signing of the consent form indicated that she knew or should have known that the physician was not the hospital's agent. <u>Churkey</u>, 329 Ill. App. 3d at 245. And while the plaintiff in <u>Churkey</u> averred in her affidavit that she believed prior to her surgery that the anesthesiologist who did her surgery was an employee of the hospital, the court noted that she did not present any specific facts to support her assertion. <u>Churkey</u>, 329 Ill. App. 3d at 244-45. The court stated:

> "Even though a plaintiff is not required to prove her case at the summary judgment stage, she must present a factual basis that would arguably entitle her to judgment in her favor. [Citation.] ***

- 12 -

> Viewing the pleadings, depositions, admissions, and affidavits liberally in plaintiffs' favor, we can conclude only that plaintiffs have not presented any factual basis for their claim that the hospital acted in such a manner as to lead a reasonable person to believe that Dr. Rustia was the hospital's agent. On the contrary, the lack of any facts showing that the hospital 'held out' Dr. Rustia as its agent, *coupled with the signed consent form clearly indicating that anesthesiologists were not hospital employees*, leads us to conclude as a matter of law that [the plaintiff] knew or should have known that Dr. Rustia was not the hospital's agent." (Emphasis added.)
> Churkey, 329 Ill. App. 3d at 245.

More recently, our supreme court handed down a decision involving the issue of apparent agency. In York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147 (2006), the plaintiff suffered a spinal injury during knee replacement surgery performed at the hospital, whereupon he and his wife filed a medical malpractice action in the circuit court of Cook County against the attending anesthesiologist. Plaintiff alleged that his injuries resulted from the improper administration of a combined spinal epidural anesthesia prior to the surgery. Prior to his surgery, the plaintiff signed a treatment consent form which stated in pertinent part:

> "I hereby authorize Dr. Rosenberg and such assistants and associates as may be selected by him/her and the Rush-Presbyterian-St. Luke's Medical Center to perform the following

procedures upon myself/the patient ***." York, 222 Ill. 2d at 153.

In finding Rush vicariously liable, the court looked at the facts presented at trial: Plaintiff heard about Rush from his colleagues and that it had good doctors; it was after plaintiff developed an interest in Rush, based upon his knowledge of the hospital and its staff, that he sought out a particular orthopedic surgeon at that institution; Rush failed to place plaintiff on notice that the physician was an independent contractor, and not an employee, of Rush, and the physician wore either scrubs covered with the Rush logo or a lab coat displaying the Rush emblem; and nothing in the treatment consent form alerted plaintiff that the physician was an independent contractor. The court held that there was ample evidence upon which the jury could find that plaintiff did not know who would serve as his attending anesthesiologist and that he relied upon Rush to provide that individual care and treatment.

In the instant case, there is evidence that decedent signed the consent forms during his first two hospitalizations, and plaintiff, his wife, signed a form during his third and final hospitalization. However, we believe the issue is not whether plaintiff was confused or led to believe by any actions on the part of Northwest that the physicians were its agents or employees but whether decedent was confused or misled by the disclosure forms and whether he perceived or believed the physicians were the agents or employees of Northwest. Obviously, if he knew or should have known that the defendant physicians were independent contractors, then the hospital is not liable. Gilbert, 156 Ill. 2d at 523. If, however, there is evidence that decedent reasonably believed his personal care physician and the consulting physicians were agents or employees of the hospital, a triable issue of fact exists and should be presented to a jury. We believe there is sufficient material

evidence on this issue of apparent agency which should be submitted to the trier of fact, and that, therefore, summary judgment was inappropriate.

Plaintiff also maintains that Northwest should not be dismissed as a party plaintiff because the complaint sufficiently alleges and the record contains material evidence to support a finding that it is liable for the negligence and malpractice of its nurses in administering methotrexate to decedent. Northwest counters that the complaint does not allege nursing negligence, and the only bases for plaintiff's claim of nursing negligence are a deposition and an affidavit, both of which were taken and executed after the complaint was filed. Defendant further argues that the section 2-622 certificate addresses itself solely to the negligence of the physicians who treated decedent and not to that of the nurses.

Count V, paragraph 1, of the complaint alleges that Northwest "owned, operated and maintained a hospital facility and provided hospital services through its actual and apparent agents and employees, including doctors, *nurses* and other health care professionals." (Emphasis added.) Paragraph 5 of count V alleges that Northwest "by and through its agents and employees including but not limited to other named defendants failed to meet the applicable standard of care" by administering methotrexate to decedent when it was contraindicated for him. In addition to those allegations, the record contains the deposition testimony of nurse Hattendorf that a nurse under her supervision was the individual who actually administered the drug, as well as the affidavit of nurse Modjeski attesting that the applicable standard of care was violated when proper protocol regarding the administration of the drug was not followed by the nursing staff.

In deciding a motion for summary judgment, the court considers the pleadings to

determine what the issues are and in so doing it presupposes that the pleadings join the issue. Olivieri v. Coronet Insurance Co., 173 Ill. App. 3d 829 (1972). In examining the instant complaint, we find it sufficiently pleads the theory of recovery that the physicians and Northwest, through its nurses, engaged in negligent conduct. Furthermore, the deposition of nurse Hattendorf and the affidavit of nurse Modjeski provide material evidence in the record for a jury to determine whether the nurses employed by Northwest violated the applicable standard of care by administering methotrexate to a patient who was in severe renal failure and on hemodialysis.

Northwest argues that the section 2-622 certificate of merit cannot support nursing negligence because it does not contain the word "nurse" or address itself to why the nurses should have known the drug was contraindicated for decedent and why they should have refused to implement the physician's orders.

Section 2-622 requires that the plaintiff in a medical malpractice action must supplement her complaint with: (1) an affidavit, her attorney's or her own if proceeding *pro se*, certifying that the affiant consulted with a qualified health care professional in whose opinion there is a reasonable and meritorious cause for the filing of the action; and (2) a copy of that health professional's written report setting forth the reasons for his determination. 735 ILCS 5/2-622(a)(1) (West 2004). McCastle v. Sheinkop, 121 Ill. 2d 188, 190 (1987). This section is a pleading requirement designed to reduce frivolous lawsuits, not a substantive defense which may be employed to bar plaintiffs who fail to meet its terms. Steinberg v. Dunseth, 276 Ill. App. 3d 1038, 1042 (1995). The plaintiff in a medical malpractice action should be allowed every reasonable opportunity to establish her case. Steinberg, 276 Ill. App. 3d at 1042; Peterson v.

- 16 -

1-05-2594

Hinsdale Hospital, 233 Ill. App. 3d 327, 332 (1992). Accordingly, the statute should be liberally construed and not mechanically applied to deprive a plaintiff of her substantive rights. Apa v. Rotman, 288 Ill. App. 3d 585, 589 (1997). The decision as to whether an action should be dismissed by reason of the plaintiff's failure to comply with the requirements of section 2-622 is a matter committed to the discretion of the trial court. McCastle, 121 Ill. 2d at 193. No report need be filed as to any defendant whose claimed liability is wholly vicarious provided that a report in compliance with section 2-622 has been filed as to the individuals whose conduct forms the basis of the vicarious liability. Cammon v. West Suburban Hospital Medical Center, 301 Ill. App. 3d 939, 948 (1999).

In support of its argument that the section 2-622 certificate is insufficient because it does not refer to the nurses, Northwest cites the case of Cammon wherein the plaintiff filed a medical malpractice action against certain named physicians and West Suburban Hospital Medical Center arising out of their care and treatment of her for renal disease and malignant hypertension. Cammon, 301 Ill. App. 3d at 942. Plaintiff attached to her complaint a health care professional's report pursuant to section 2-622, which this court found adequately discussed the deficiencies in the medical care rendered by the named physicians and contained reasons in support of the conclusion that a reasonable and meritorious cause existed for the filing of an action against each of them. Cammon, 301 Ill. App. 3d at 949. This court further found that the report met the requirements of section 2-622 with respect to the claims asserted against West Suburban, which were predicated solely upon its alleged vicarious liability for the conduct of the physicians. Cammon, 301 Ill. App. 3d at 949.

- 17 -

1-05-2594

Plaintiff subsequently dismissed her claims against the physicians and filed an amended complaint, which omitted any claims against West Suburban predicated upon the conduct of those doctors. Cammon, 301 Ill. App. 3d at 949. While the amended complaint alleged that West Suburban was vicariously liable for the claimed negligence of unnamed nurses, residents, medical technicians, anesthesiologists, and other health care professionals, it was unsupported by an affidavit or health care professional's report as to those unnamed individuals. Cammon, 301 Ill. App. 3d at 949. Since the report did not discuss the deficiencies in the medical care rendered by these unnamed individuals or support a conclusion that a reasonable and meritorious cause existed for the filing of an action against West Suburban by reason of their conduct, this court held that the amended complaint was not in compliance with the requirements of section 2-622. Cammon, 301 Ill. App. 3d at 949. However, this court went on to state that a sound exercise of discretion mandated that the plaintiff be afforded the opportunity to amend her complaint in order to comply with section 2-622. Cammon, 301 Ill. App. 3d at 949-50.

Unlike in Cammon, the plaintiff in the instant case did not dismiss the named physicians, and the section 2-622 certificate adequately discusses the deficiencies in the medical care rendered by them and particularly Northwest Hospital. Furthermore, the affidavit of nurse Modjeski which was submitted by plaintiff in response to the motion for summary judgment, although not designated as a section 2-622 certificate, sufficiently complies with the spirit of that section by discussing the deficiencies in the medical care rendered by the nurses and contains reasons to support the conclusion that a reasonable and meritorious cause exists for the filing of this action. If we are to adhere to the proposition that section 2-622 should be liberally construed and a

- 18 -

plaintiff in a medical malpractice action should be allowed every reasonable opportunity to establish her case, then we are compelled to find that plaintiff has sufficiently placed defendant on notice that she is alleging nursing negligence and has established that her lawsuit is not frivolous or without merit. To do otherwise would permit defendant to use section 2-622 as a substantive defense in barring plaintiff from establishing her case. Additionally, it should be noted that before or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms. 735 ILCS 5/2-1005(g) (West 2004). Therefore, upon remand plaintiff should be afforded an opportunity to amend her complaint in order to add the names of all of the nurses, including Deborah Hattendorf, who participated in the care and treatment of decedent.

Therefore, based upon the foregoing analysis, we reverse the trial court's order which granted summary judgment in favor of Northwest and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

WOLFSON, P.J., and HOFFMAN, J., concur.