# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835

---

| | |
|---|---|
| Appellate Court Caption | JOHN G. FREZADOS, Plaintiff-Appellant, v. INGALLS MEMORIAL HOSPITAL, an Illinois Corporation, d/b/a Ingalls Family Care Center, Tinley Park, Defendant-Appellee (Sullivan Urgent Aid Centers, Ltd., an Illinois Corporation, and John Olivieri, M.D., Defendants). |
| District & No. | First District, Third Division<br>Docket No. 1-12-1835 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | May 1, 2013<br><br>May 30, 2013<br>June 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant hospital in a medical malpractice action alleging that defendant was vicariously liable for the treatment provided by two physicians at the hospital, since no factual question was raised by plaintiff as to whether the hospital "held out" the physicians as employees of the hospital. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-9972; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

McArdle & Frost (Michael J. Frost, of counsel), and Mary Patricia Benz, both of Chicago, for appellant.

Anderson, Rasor & Partners, LLP, of Chicago (Michele C. Anderson and Albert C. Lee, of counsel), for appellee.

Panel

JUSTICE STERBA delivered the judgment of the court, with opinion. Justices Hyman and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellant John Frezados filed a complaint alleging medical negligence against defendant-appellee Ingalls Memorial Hospital, d/b/a Ingalls Family Care Center, Tinley Park (defendant or Ingalls), and defendants Sullivan Urgent Aid Centers, Ltd., and Dr. John Olivieri. Specifically, plaintiff alleged defendant was vicariously liable for the negligent acts of Dr. Olivieri and Dr. Hassan Ibrahim, two of his treating physicians. Defendant moved for summary judgment, which was granted. On appeal, plaintiff contends that the circuit court erred in granting summary judgment because genuine issues of material fact exist concerning: (1) whether defendant held out Drs. Olivieri and Ibrahim as its employees; and (2) whether plaintiff's signature on a form that disclaimed any employer-employee relationship between defendant and Drs. Olivieri and Ibrahim precluded him from arguing that he reasonably believed the doctors were employees of the hospital. For the following reasons, we affirm.

¶ 2                    BACKGROUND

¶ 3    Plaintiff filed suit against defendant, among others, arising out of personal injuries he sustained after he suffered a ruptured abdominal aortic aneurysm. In his third amended complaint, plaintiff alleges professional negligence against defendant based on the actions of its alleged agents, codefendant Dr. Olivieri and Dr. Ibrahim, who is not a defendant in this case.

¶ 4    At his discovery deposition, plaintiff testified that his son drove him to Ingalls in Tinley Park, Illinois on September 11, 2006, because he was experiencing severe abdominal pain. Plaintiff chose to receive care at Ingalls because he previously had a triple bypass operation there and credited the hospital with saving his life. In addition, he had taken his children to Ingalls for treatment for illnesses when they were younger.

¶ 5    When plaintiff arrived at Ingalls on September 11, he went directly to the Urgent Aid Center and spoke to a person at the intake desk about his symptoms. At that time, he was

given a form titled "Consent for Treatment," which he signed. The 2-page form has his name and birth date printed at the top of the first page and consists of 11 numbered paragraphs, including a general consent for treatment, assignment of insurance benefits, and a release of responsibility for valuables, among others. At issue in this case is paragraph two, which reads as follows:

> "I have been informed and understand that physicians providing services to me at Ingalls, such as my personal physician, Emergency Department and Urgent Aid physicians, radiologists, pathologists, anesthesiologists, on-call physicians, consulting physicians, surgeons, and allied health care providers working with those physicians are not employees, agents or apparent agents of Ingalls but are independent medical practitioners who have been permitted to use Ingalls' facilities for the care and treatment of their patients. I further understand that each physician will bill me separately for their services."

Plaintiff testified that he signed an identical form in 2002, when he had cataract surgery at Ingalls, but did not remember reading it. Likewise, in 2006, he did not read the form before signing because he was in too much pain and simply wanted to be treated.

¶ 6    He told a nurse that his pain was an 8 out of 10, and she took him immediately to an examination room where he was treated by Dr. Olivieri, whom he had never met before. Plaintiff testified that he believed Dr. Olivieri was an employee of Ingalls based on the fact that the doctor was present at the hospital that day.

¶ 7    Ultimately, plaintiff was diagnosed with an abdominal aortic aneurysm. According to plaintiff, Dr. Olivieri told him that there were physicians who could treat this condition at Ingalls. Before discharging plaintiff, Dr. Olivieri informed plaintiff that an appointment had been made for him with Dr. Ibrahim on September 18 and gave him a card as a reminder.

¶ 8    Two days later, on September 13, 2006, plaintiff woke at approximately 4 a.m. with severe pain. His son called Ingalls, and after speaking with someone there, he called Dr. Ibrahim. Dr. Ibrahim spoke to plaintiff and told him to double his dosage of pain medication and keep his appointment for the eighteenth. Later that day, plaintiff suffered a ruptured abdominal aortic aneurysm which needed surgical repair.

¶ 9    Prior to the phone conversation on September 13, plaintiff had never met or spoken with Dr. Ibrahim. However, plaintiff believed that Dr. Ibrahim was employed by Ingalls because Dr. Ibrahim worked in the building where the Urgent Aid Center was located, and because he was referred to Dr. Ibrahim by Dr. Olivieri.

¶ 10    Defendant moved for summary judgment on the grounds that there was no issue of fact as to whether Drs. Olivieri and Ibrahim were the actual or apparent agents of defendant so as to support recovery on the theory of vicarious liability. In support, it submitted the affidavit of Diane Jacoby, the general counsel for Ingalls Health System. Jacoby stated that neither Dr. Olivieri nor Dr. Ibrahim was defendant's employee. She explained that defendant did not provide compensation to either doctor, and that Dr. Olivieri was an independent contractor who was granted privileges to work at the Urgent Aid Center, while Dr. Ibrahim leased space in the medical office building. Finally, she stated that in September 2006 there were signs posted in the waiting and examination rooms at Ingalls which read:

"The doctors at Ingalls are not employees or agents of the hospital. They are independent contractors. Billing for their services will be provided separately from the hospital charges. Urgent Aid Physicians, CT, MRI, Mammography, Ultrasound, Cardiology, Radiology, Pathology."

¶ 11    The circuit court granted summary judgment in favor of defendant, and plaintiff timely filed this appeal.

¶ 12                                ANALYSIS

¶ 13    Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006). In making this determination, the court must view the record materials in the light most favorable to the nonmovant. *Federal Insurance Co. v. Lexington Insurance Co.*, 406 Ill. App. 3d 895, 897 (2011). We review *de novo* an order granting summary judgment. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). On appeal, plaintiff argues the lower court erred in granting summary judgment in favor of defendant because there was a factual question regarding whether defendant was vicariously liable for the allegedly negligent acts of Drs. Olivieri and Ibrahim.

¶ 14    In the leading case of *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993), our supreme court held that a hospital may be vicariously liable for medical or professional negligence if there is an apparent agency relationship between the hospital and the treating physicians. Prior to that decision, Illinois law permitted hospitals to be held vicariously liable only for negligent acts of their *actual* agents. *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 24. The decision in *Gilbert* reflected the "reality of modern hospital care" in which patients rely on the reputation of the hospital, rather than individual doctors, in seeking emergency treatment and naturally assume the doctors are hospital employees. *Gilbert*, 156 Ill. 2d at 521 (quoting *Arthur v. St. Peters Hospital*, 405 A.2d 443, 447 (N.J. Super. Ct. Law Div. 1979)). It was for this reason that the supreme court expanded the scope of a hospital's liability to include negligent acts of apparent, in addition to actual, agents. *Gilbert*, 156 Ill. 2d at 521-22.

¶ 15    In the case *sub judice*, only apparent agency is at issue.[1] In order to establish apparent agency, a plaintiff must show: " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Id.* at 525 (quoting *Pamperin v. Trinity*

---

[1]Plaintiff in his complaint alleges, in the alternative, that defendant was liable for professional negligence based on the actions of its actual agents, but he makes no such argument on appeal. Indeed, the record conclusively establishes that neither Dr. Olivieri nor Dr. Ibrahim was ever employed or compensated by defendant.

*Memorial Hospital*, 423 N.W.2d 848, 856 (Wis. 1988)).

¶ 16    We turn first to the question of whether the actions of defendant or Drs. Olivieri and Ibrahim reasonably led plaintiff to believe that the doctors were defendant's employees or agents. In *Gilbert*, our supreme court explained that this element–commonly referred to as "holding out"–is satisfied if the hospital presents itself as a provider of emergency room care without informing the patient that the care is being provided by independent contractors. *Id.* The court in *Gilbert* determined the defendant hospital did not so inform its patients; to the contrary, the hospital's treatment consent form read that patients would be treated by " 'physicians and employees of the hospital.' " *Id.* at 526.

¶ 17    In contrast, here, the consent for treatment form which plaintiff signed included an explicit acknowledgment that "physicians providing services to me at Ingalls, such as *** *Emergency Department and Urgent Aid physicians* *** are not employees, agents or apparent agents of Ingalls but are independent medical practitioners." (Emphasis added.) In addition to this acknowledgment, the uncontradicted affidavit of defendant's general counsel stated that signs were posted in both the waiting room and treatment area to the same effect.

¶ 18    We have routinely held that a plaintiff's signature on consent forms containing similar language disclaiming an agency relationship is an important factor to consider when determining whether the "holding out" requirement has been satisfied. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 26; see also *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 633 (1998) ("[c]ertainly having the patient sign a consent for treatment form which expressly states that 'the physicians on staff at this hospital are not employees or agents of the hospital' may make the proving of [the holding out] element extremely difficult"); *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1088 (2009) (where plaintiff signed consent form referring to physicians as independent contractors and stating that physicians and hospital would be paid separately, no issue of fact to survive summary judgment).

¶ 19    Of particular import is the decision in *Churkey v. Rustia*, 329 Ill. App. 3d 239 (2002). There, the plaintiff, who alleged that the defendant hospital was liable for the negligence of her anesthesiologist, signed a consent form stating that physicians performing anesthesia services were independent contractors and not employees of the defendant hospital. *Churkey*, 329 Ill. App. 3d at 240-41. When the defendant hospital moved for summary judgment on the basis of this signed consent, the plaintiff countered with an affidavit in which she stated that she did not read the form prior to signing and that she believed her anesthesiologist was a hospital employee. *Id.* at 241-42. We concluded that this statement did not raise an issue of fact given that the plaintiff did not point to any specific actions the hospital took that reasonably led her to conclude that her anesthesiologist was the hospital's agent. *Id.* at 245. The absence of such facts along with the signed consent compelled us to affirm summary judgment in favor of the defendant hospital. *Id.*

¶ 20    Likewise, in the case *sub judice*, plaintiff admitted in his deposition testimony that neither defendant nor Dr. Olivieri did anything to make him believe Dr. Olivieri was defendant's employee:

        "Q. Was there anything–other than the fact that Dr. Olivieri was there working there

-5-

that day, was there anything about Dr. Olivieri that led you to believe that he was employed by Ingalls?

A. No, other than the fact that he was walking around over there and he was the doctor that took care of me.

Q. Okay. All right. Did he say anything to lead you to believe that he was employed by Ingalls?

A. No.

Q. Okay. Was there anything that Ingalls did that led you to believe that Dr. Olivieri was employed by Ingalls?

A. No."

Just as in *Churkey*, this testimony, coupled with the form plaintiff signed that disclaimed any employer-employee relationship between defendant and Drs. Olivieri and Ibrahim, suggests that as a matter of law, no reasonable person could have believed the doctors were the agents of defendant.

¶ 21 Importantly, the form utilized in this case is not comparable to those in *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006), or *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826 (2009). In *Schroeder*, the disclosure provision at issue read that a patient's care " 'will be managed by [his] personal physician or other physicians who are not employed by Northwest Community Hospital.' " (Emphasis omitted.) *Schroeder*, 371 Ill. App. 3d at 587. The plaintiff argued this language could reasonably be construed to mean that his personal physician *was* employed by the defendant hospital, and we agreed that there was a triable issue of fact regarding apparent agency. *Id.* at 589, 594. Likewise, the consent form in *Spiegelman*, though it contained a paragraph disclaiming an agency relationship between the hospital and emergency room physicians, also stated that during a patient's visit to the emergency department "hospital employees" would attend to his medical needs. *Spiegelman*, 392 Ill. App. 3d at 829, 837. In addition, the signature line on the form was beneath a separate, unnumbered paragraph concerning the release of property. *Id.* at 837. Based on these facts, we affirmed the trial court's denial of the defendant hospital's motion for judgment notwithstanding the verdict, holding that a jury could reasonably conclude that the plaintiff did not know of her doctor's independent contractor status. *Id.* at 837, 841.

¶ 22 No comparable facts exist in the instant case. The form at issue states clearly and concisely that none of the physicians at defendant hospital are its employees, agents, or apparent agents and are instead independent contractors. There are no exceptions to this language, and the disclaimer is not implicitly contradicted elsewhere in the form, as in *Schroeder* and *Spiegelman*. Moreover, the form specifies that the patient will receive a separate bill from each of his treating physicians. Therefore, it is akin to the disclaimers we found sufficient to support a grant of summary judgment in favor of the defendant hospitals in *Wallace*, *Churkey*, and *Lamb-Rosenfeldt*.

¶ 23 Nevertheless, plaintiff argues that his signature on the consent form does not foreclose the existence of an issue of fact where his pain prevented him from reading the form prior to signing. We disagree. In other contexts, courts have routinely held that a party has a duty

to read documents prior to signing them, and a failure to do so will not necessarily raise an issue of fact as to the party's knowledge of the document's contents. See, *e.g.*, *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 117 (2010); see also *Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173, 184 (1992); *Great American Federal Savings & Loan Ass'n v. Grivas*, 137 Ill. App. 3d 267, 275 (1985). We see no reason not to extend this well-established principle to consent for treatment forms. Indeed, we have never been persuaded by plaintiffs who have opposed motions for summary judgment on the basis that they did not read the form (*Churkey*, 329 Ill. App. 3d at 241-42), or that their shock prevented them from understanding the form's provisions (*Wallace*, 389 Ill. App. 3d at 1084).

¶ 24 Significantly, a holding to the contrary would drastically diminish the value of independent contractor disclaimers. Nearly everyone who seeks emergency treatment is in some physical or emotional distress, and were we to hold that such distress could operate to nullify provisions in an otherwise duly signed treatment consent form, hospitals would always be required to proceed to trial on claims of vicarious liability. Thus, while we are not unsympathetic to the pain experienced by plaintiff at the time he sought medical treatment, we cannot hold that this pain could excuse him from reading the form prior to signing, or from having someone else sign the form if he was unable to consent due to his condition.

¶ 25 Because we conclude that plaintiff has failed to raise a factual question as to the "holding out" element of his cause of action, we need not determine whether there is evidence going to show plaintiff's justifiable reliance. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007) ("[i]f the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper").

¶ 26 For the reasons stated, we affirm the circuit court's order granting summary judgment.

¶ 27 Affirmed.