# Illinois Official Reports

## Appellate Court

---

### *Gore v. Provena Hospital*, 2015 IL App (3d) 130446

---

| | |
|---|---|
| Appellate Court Caption | FELICIA GORE, Individually and as Mother and Next Friend of Randall Robinson, a Disabled Person, Plaintiff-Appellant, v. PROVENA HOSPITAL, d/b/a Provena Saint Joseph Medical Center, Defendant-Appellee (Patricia P. Panelli, M.D., and Prairie Emergency Services, S.C., Defendants). |
| District & No. | Third District<br>Docket No. 3-13-0446 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | February 9, 2015<br><br>March 31, 2015<br>March 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 08-L-270; the Hon. Michael J. Powers, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph A. Power, Jr., and Kathryn L. Conway (argued), both of Power Rogers & Smith, P.C., of Chicago, for appellant.<br><br>Nancy G. Lischer (argued), of Hinshaw & Culbertson, of Chicago, for appellee. |

Panel

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge specially concurred, with opinion.

**OPINION**

Gore appeals the trial court's grant of Provena Saint Joseph Medical Center's (Provena) motion for summary judgment where the court held the consent form she signed was an acknowledgment that the hospital was not holding out physicians as agents or employees and thus there was no reliance on such holding out. We affirm.

FACTS

Randall Robinson is one of Felicia Gore's three children. On July 19, 1989, Randall was born prematurely with cerebral palsy at Michael Reese Hospital. He was diagnosed with hydrocephalus and at three months a shunt was placed in his head. He remained at Michael Reese Hospital until he gained enough weight to be transferred to Silver Cross Hospital, where he stayed for six months. There, Dr. Kishnor Jain became and has remained his pediatrician.

On January 30, 2000, when he was 10 years old, Randall began experiencing complications including vomiting, headaches, nasal congestion, increased drooling, and a sore throat. An ambulance was called. Knowing that Dr. Jain was affiliated with Silver Cross and wanting Randall to be seen by him, Gore insisted to the paramedics that Randall be transported to Silver Cross for treatment. In the paramedics' opinions, Randall required immediate care and since Provena was closer than Silver Cross that is where they took Randall. Though she failed to accurately remember during her deposition, Gore went to Silver Cross while the paramedics transported Randall to Provena. Neither Gore nor Randall had been treated by any physician at Provena prior to January 30, 2000.

Randall's medical records from Provena show that at 9:45 a.m. on January 30, his vital signs were checked and recorded by Provena personnel. The record notes also show that at 10:15 a.m., Gore phoned Provena from Silver Cross to determine where Randall had been taken. The nurse's report noted that Gore was upset that Randall was taken to Provena and that Gore was informed by Provena that "once the patient arrives [at Provena], they [*sic*] become [their] responsibility."

At 10:20 a.m., Dr. Patricia Panelli examined Randall at Provena and ordered a CT scan. She made several notes in Randall's medical history and also spoke with Dr. Jain. After noting an inability to accurately compare Randall's CT scans from Children's Memorial Hospital with the newer ones she had ordered, Dr. Panelli discharged Randall at 2:10 p.m. with a diagnosis of an upper respiratory infection. She gave instructions to follow up with Dr. Jain the next day and to seek immediate care if he vomited, the rash persisted, or his condition worsened.

¶ 7    Dr. Panelli did not consult any other physician about the CT scan comparisons. She did note in her discharge summary that the CT taken at Provena demonstrated a "marked dilated left lateral ventricle, as well as a large posterior fossa cystic mass, which is probably related to a very dilated fourth ventricle." Dr. Panelli further wrote that "these findings suggest [the] possibility of shunt malfunction and clinical correlation is advised."

¶ 8    Gore arrived at Provena at some point after Randall was initially seen by Dr. Panelli, but the exact time of her arrival is not recorded. Upon her arrival, she was given a consent form to sign as Randall's nearest relative or legal guardian. The consent form contained an independent contractor disclaimer under a section heading, "CONSENT TO TREAT." This section states, in relevant part: "I understand that all doctors furnishing service to me, including emergency department physicians, radiologists, anesthesiologists, pathologists, cardiologists, surgeons, and the like, are not employees nor agents of Saint Joseph Medical Center."

¶ 9    The consent form concludes with a section entitled "acknowledgement of receipt of patient's bill of rights and responsibilities," which states, in relevant part: "I hereby acknowledge receipt of Statement of Patient's Rights and Responsibilities. I understand that professional personnel are available to explain the statement." There is no evidence that anyone explained the terms of the consent form to Gore. Gore is a high school graduate who has held a variety of professional jobs.

¶ 10    The next day, January 31, Gore took Randall for a follow-up with Dr. Jain, as directed. At that time, Randall was still complaining of a headache, lethargy, and dehydration. Later that day, Randall's condition worsened. Dr. Jain decided that Randall should be admitted because of his respiratory problems, and his mother brought him to the Silver Cross emergency room. After admission, Randall continued to experience lethargy, headaches, dehydration and severe discomfort. Randall was treated by Dr. Jain and other hospital staff while at Silver Cross.

¶ 11    On February 2, Randall was transferred to Children's Memorial Hospital by ambulance where he underwent a ventriculoperitoneal shunt revision to correct the shunt disconnection at the valve.

¶ 12    Gore claims that as a consequence of Dr. Panelli's allegedly negligent treatment, Randall suffered serious and permanent injuries resulting in decreased physical and cognitive function.

¶ 13    On April 7, 2008, Gore filed her original complaint against several entities involved in the care of Randall including Provena. After multiple amended complaints, on May 11, 2012, Provena filed its motion for summary judgment. On July 24, the court awarded Provena summary judgment after considering the written briefs and oral arguments. Gore's motion to reconsider was denied.

¶ 14    This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    We review *de novo* an order granting summary judgment. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *State Farm Mutual*

*Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006). In making this determination, the court must view the record materials in the light most favorable to the nonmovant. *Federal Insurance Co. v. Lexington Insurance Co.*, 406 Ill. App. 3d 895, 897 (2011).

¶ 17    As an initial matter, Provena argues that Gore is relying only upon allegations from her complaint to oppose summary judgment. Our courts have held that "[i]f the moving party presents facts which, if not contradicted, would entitle the moving party to judgment as a matter of law, the opposing party cannot rely upon his complaint alone to raise genuine issues of material fact." *Lulay v. Parvin*, 359 Ill. App. 3d 653, 658-59 (2005) (citing *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974)). Provena is correct in its statement of the law. However, Gore was not solely relying upon her complaint to oppose summary judgment. She contradicted Provena's assertion that her signing the consent form was dispositive with not only the allegation in her initial complaint but also with facts presented at the hearing. Her complaint argued that she was not aware of any nonagency relationship between Provena and Panelli despite signing the consent form and her arguments at the hearing related to her contention that Provena held Panelli out as an agent.

¶ 18    In analyzing Gore's agency relationship argument, we turn to *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 525 (1993), which sets out the elements required to prove apparent agency between a physician and hospital:

> "[A] plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." (Internal quotation marks omitted.) *Id*.

¶ 19    The supreme court has interpreted this to mean that liability attaches to a hospital for the negligent acts of a physician who is not employed by the hospital when the physician is the apparent or perceived agent of the hospital unless the patient knows or should know that the physician is an independent contractor. *Id*. at 522. Thus, the first two elements required to establish apparent agency merge, leaving two final elements of apparent agency, which are: (1) a "holding out" of the party who was alleged to be negligent as an agent; and (2) reasonable reliance by a third party on the principal's conduct. *Id*. We will review each element in turn.

¶ 20                                      Holding Out

¶ 21    In *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081 (2009), the court emphasized what the supreme court stated in *Gilbert*. To defeat a claim of apparent authority, all that was required was some evidence to show that the plaintiff knew or should have known of the physician's independent contractor status. *Id.* at 1088. We have routinely held that a plaintiff's signature on consent forms containing language disclaiming an agency relationship is an important factor to consider when determining whether the "holding out" requirement has been satisfied. See *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835, ¶ 18 (citing *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 26); see also *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 633 (1998)

("[c]ertainly having the patient sign a consent for treatment form which expressly states that 'the physicians on staff at this hospital are not employees or agents of the hospital' may make the proving of [the holding out] element extremely difficult"); see also *Wallace*, 389 Ill. App. 3d at 1087 (noting that such disclaimers, though "not always dispositive on the issue of 'holding out,' *** are an important factor to consider").

¶ 22 It is uncontested that Gore signed the consent form acknowledging her understanding that the physicians at the hospital were independent contractors and not agents of the hospital. Yet, she argues that when the paramedics made the unilateral decision to transport Randall to Provena, an emergency care facility, instead of Silver Cross as Gore instructed, they were doing so because the hospital held itself out as a facility capable of providing that care. She relies on *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503 (1994). In *Monti*, the court held that the paramedics responsible for the unconscious patient sought care from the hospital and not a personal physician, and thus, "a jury could find that they relied upon the fact that complete emergency room care *** would be provided through the hospital staff." *Monti*, 262 Ill. App. 3d at 508. The unconsciousness of the patient in *Monti* can be likened to Randall's status as a minor with neither of them capable of choosing the hospital where he was transported and treated.

¶ 23 Gore further argues the facts that treatment of Randall began prior to her signing the form and that the paramedics chose the hospital because it held itself out as a facility capable of providing care together establish the "holding out" component of apparent agency.

¶ 24 The *Wallace* decision, however, renders both of these arguments meritless. *Wallace*, 389 Ill. App. 3d at 1088. In *Wallace*, the court noted that even though treatment of the patient began before the plaintiff arrived at the hospital, because it was an emergency, the in-progress treatment did not render the patient's consent form irrelevant regardless of whether she was aware that treatment would continue without the signing of the consent form. *Id*. Nor is *Monti* helpful to Gore because in that case there was no consent form advising patients that the physicians were independent contractors of the hospital as is the case here.

¶ 25 Additionally, we agree with the trial court regarding the terms of the consent form. Unlike the consent forms in the cases Gore relies upon, *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826 (2009), and *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006), the terms of the form in this case are clear and unambiguous.

¶ 26 In *Spiegelman*, the court noted that the terms in the consent form, in that case, could be construed by a trier of fact as misleading because they did not make clear which physicians were employees of the hospital and which were independent contractors. *Spiegelman*, 392 Ill. App. 3d at 837. In that case, "immediately preceding the paragraph containing the [disclaimer] is a paragraph stating: 'I am aware that during my visit to the Emergency Department of VICTORY MEMORIAL HOSPITAL, *hospital employees* will attend to my medical needs as may be necessary.' " (Emphasis in original.) *Id*.

¶ 27 Similarly in *Schroeder*, the court noted the wording of the consent form, in that case, disaffirming an agency relationship between the physicians and the hospital, but further highlighted the rest of the consent form that stated that the physician's care is supported by employees of the hospital. *Schroeder*, 371 Ill. App. 3d 584. Thus because of those confusing and contradictory terms regarding who would be providing care to the patient, the court held that there was sufficient material evidence to establish a triable issue of fact of whether the

patient or the plaintiff knew or should have known that the physicians who treated the patient were independent contractors. *Id*. at 593-94. Thus, summary judgment was inappropriate. *Id*.

¶ 28    In the case at hand, the language in the consent form is clear that the identified personnel are not agents of the hospital but are independent contractors. This clarity contradicts Gore's argument that this consent form is extremely similar to the forms in *Schroeder* and *Spiegelman.*

¶ 29    In reality, the form in this case is more like the consent form in *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835. The *Frezados* court distinguished its consent form from those in *Schroeder* and *Spiegelman*. *Id*. ¶¶ 21-22. It held:

> "The form at issue states clearly and concisely that none of the physicians at defendant hospital are its employees, agents, or apparent agents and are instead independent contractors. There are no exceptions to this language, and the disclaimer is not implicitly contradicted elsewhere in the form, as in *Schroeder* and *Spiegelman*. Moreover, the form specifies that the patient will receive a separate bill from each of his treating physicians." *Id*. ¶ 22.

¶ 30    Here, there are no additional terms on the consent form that would raise a question of fact regarding whether Gore knew or should have known that the physicians who treated Randall were independent contractors. Moreover, the additional terms Gore points to that are present in *Schroeder* and *Spiegelman* referencing service to be provided by actual hospital employees were not present in *Frezados* and are not present in this case.

¶ 31    Gore's final arguments concerning a lack of any explanation of the consent form and the weight to be placed upon the fact that neither she nor Randall had ever been a patient of Provena are without merit. The opportunity for assistance in understanding the form is presented twice in the consent form itself, which states that "professional personnel are available to explain the statement." There is no evidence in the record that Gore ever asked for any explanation or assistance. Moreover, Gore is a high school graduate who has held various professional positions. It is not unreasonable to find that she understood the consent form that she signed. See *Frezados*, 2013 IL App (1st) 121835, ¶ 23. Additionally, the issue here centers on whether the form Gore was asked to acquiesce to was clear and unambiguous–which it was–not how many opportunities she had to review Provena's standard consent form by frequenting and being treated there. See *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 131, *appeal denied*, No. 116843 (filed Jan. 29, 2014) (noting that a single consent form is " 'almost conclusive' " of determining hospital's liability (quoting *Thede v. Kapsas*, 386 Ill. App. 3d 396, 401 (2008))).

¶ 32    The court in *Frezados* found that consent form sufficient to support a grant of summary judgment. *Frezados*, 2013 IL App (1st) 121835, ¶ 22. We find the same with regard to the consent form in this case.

¶ 33    Thus in this case, Gore has failed to establish the "holding out" element of apparent authority and the trial court did not err in finding the consent form to be sufficient evidence of Gore's awareness of Dr. Panelli's independent contractor status.

¶ 34    Our conclusion that Gore failed to establish the "holding out" element renders analysis of the third element of apparent agency unnecessary. *Frezados*, 2013 IL App (1st) 121835, ¶ 25 (citing *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007) ("[i]f the plaintiff fails to

establish any element of the cause of action, summary judgment for the defendant is proper")).

¶ 35                                                    Public Policy

¶ 36        Gore's final argument that the trial court's holding is against the supreme court's emphasis on the realities of hospital business practices and is therefore against public policy is without merit. Apparent agency in the context of all business practices is "based upon principles of estoppel: 'The idea is that if a principal creates the appearance that someone is his agent, he should not then be permitted to deny the agency if an innocent third party reasonably relies on the apparent agency and is harmed as a result.' " *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 187 (2006) (quoting *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (1996)). Gore argues that to rely on her signing of a consent form when the hospital held itself out as the apparent principal of Dr. Panelli would be contrary to this principle. However, we have already discussed Gore's failure to establish the "holding out" element of this cause of action. Thus, the court did not ignore the fundamental principle of estoppel based on the realities of a hospital's business practice; such estoppel did not exist. To conclude otherwise would "drastically diminish the value of independent contractor disclaimers." *Frezados*, 2013 IL App (1st) 121835, ¶ 24.

¶ 37                                                    CONCLUSION

¶ 38        Gore failed to establish the "holding out" element of apparent agency with regard to Provena's relationship with Dr. Panelli. This finding precludes any conclusion that there has been a violation of the public policy asserted by Gore on the grounds of collateral estoppel. Therefore, we affirm the trial court's grant of summary judgment in favor of Provena.

¶ 39        Affirmed.

¶ 40        JUSTICE HOLDRIDGE, specially concurring.

¶ 41        I agree with the majority's judgment. I write separately because I disagree with one aspect of the majority's analysis. Relying on *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081 (2009), the majority appears to suggest that, if a plaintiff signs a consent form that unambiguously states that the physicians providing emergency treatment at a hospital are independent contractors, the hospital cannot be held liable for any negligent treatment those physicians provided before the form was signed. See *supra* ¶ 24. In other words, the majority seems to rule that the plaintiff's signing of such a consent form retroactively immunizes the hospital by making it impossible for the plaintiff to prove the "holding out" element of apparent agency, regardless of what the doctors or the hospital did before the form was signed.

¶ 42        I disagree. The element of "holding out" is satisfied "if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 525 (1993). Hospitals " 'increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services.' " *Id.* at 520 (quoting *Kashishian v. Port*, 481 N.W.2d 277, 282 (Wis. 1992)). Moreover, the element of justifiable

reliance on the part of the plaintiff is satisfied if the plaintiff or those responsible for his care (such as paramedics or a parent or other relative if the patient is a minor or an incapacitated adult) "rel[y] upon the hospital to provide complete emergency room care, rather than upon a specific physician." *Id.* at 525; see also *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503, 507-08 (1994) (holding that emergency personnel who transported an unconscious patient to the nearest hospital for emergency treatment "relied upon [that] hospital's ability to provide the services [the patient] would require").

¶ 43    In this case, the paramedics took Randall to Provena because it was the nearest hospital. In choosing Provena, the paramedics relied upon Provena to provide the emergency care Randall needed. There is no evidence that the paramedics were aware that the physicians who would be treating Randall were independent contractors rather than employees of Provena. Moreover, Provena accepted Randall for treatment and admitted him without informing the paramedics that its doctors were independent contractors. In my view, this evidence could establish the elements of "holding out" and "justifiable reliance" under *Gilbert* and *Monti*. Accordingly, if the plaintiff in this case could present some evidence that a physician at Provena negligently treated Randall before the plaintiff arrived at the hospital and signed the consent form, I believe that she could survive summary judgment. To the extent that *Wallace* suggests otherwise, I would decline to follow it.[1]

¶ 44    However, the plaintiff has not presented such evidence in this case. Based on a Provena nurse's note, Dr. Panelli testified that it was "unlikely" that the plaintiff was present when she first saw Randall at the hospital, but she stated that she might not have actually treated or examined Randall until the plaintiff was there. The plaintiff did not refute this testimony. To the contrary, the plaintiff testified during her deposition that she was "at the emergency department the entire time that [her] son was there." Although the claimant later testified that she went to Silver Cross before coming to Provena that day, she presented no testimony or other evidence suggesting that Randall's treatment actually began before she arrived at Provena and signed the consent form. Nor did the plaintiff suggest that any acts of negligence allegedly committed by Dr. Panelli occurred before that time. Thus, although there is evidence suggesting that the plaintiff was not present when Randall was taken to Provena, there is no evidence suggesting that Randall underwent any actual medical treatment at Provena before the plaintiff arrived and signed the consent form. Under these particular facts, the plaintiff's signing of the consent form acknowledging that all doctors at Provena were independent contractors prevents her from establishing the "holding out" element of an apparent agency claim against Provena. Thus, I agree with the majority's judgment.

---

[1]It should be noted, however, that *Wallace* is distinguishable from this case in certain material respects. In *Wallace*, the minor plaintiff's mother was "unquestionably in charge" of her daughter's care and had the ability to choose where the paramedics would take her child to receive treatment. *Wallace*, 389 Ill. App. 3d at 1094. Here, by contrast, the paramedics chose to take Randall to Provena despite the fact that the plaintiff specifically asked them to take him to Silver Cross so he could be treated by his regular physician. Moreover, unlike the plaintiff in this case, the plaintiff in *Wallace* had been to the defendant hospital four times before the incident at issue and had signed the hospital's unambiguous consent form each time.