# Illinois Official Reports

## Appellate Court

---

**Holloway v. Chicago Heart & Vascular Consultants, Ltd., 2017 IL App (1st) 160315**

---

| | |
|---|---|
| Appellate Court Caption | AGNES HOLLOWAY, as Special Administrator of the Estate of Byron Byars, Deceased, Plaintiff-Appellant, v. CHICAGO HEART & VASCULAR CONSULTANTS, LTD., ANIL RANGINANI, M.D., and MERCY HOSPITAL & MEDICAL CENTER, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-0315 |
| Filed | June 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-12140; the Hon. Janet Adams Brosnahan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Edward G. Proctor, Jr., of Munday & Nathan, of Chicago, for appellant.<br><br>Catherine Basque Weiler, of Swanson Martin & Bell, LLP, of Chicago, for appellees Chicago Heart & Vascular Consultants, Ltd., and Anil Ranginani.<br><br>Richard H. Donohue, Karen Kies DeGrand, and Meagan P. VanderWeele, of Donohue Brown Mathewson & Smyth LLC, of Chicago, for other appellee. |

Panel JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1      This appeal involves a wrongful death action based on alleged medical negligence. The action was brought by plaintiff Agnes Holloway as special administrator of the estate of her deceased husband Byron Byars. Plaintiff appeals a circuit court order dismissing the *pro se* complaint she brought against defendants Chicago Heart & Vascular Consultants, Ltd., Dr. Anil Ranginani, and Mercy Hospital & Medical Center (collectively defendants).

¶ 2      Plaintiff's complaint asserted a cause of action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2014)). She claimed that defendants provided negligent medical treatment and follow-up care to the decedent, who suffered a fatal cardiac tamponade allegedly resulting from a perforated superior vena cava occurring during a venogram procedure.[1]

¶ 3      Defendants filed motions to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). Defendants argued that the plaintiff, as a *pro se* litigant, could not bring a wrongful death action on behalf of her husband's estate because such an action is properly brought in a representative capacity, and although a layperson may file a complaint on his or her own behalf, a layperson may not initiate legal proceedings on behalf of someone else. Defendants maintained that because the wrongful death action was filed by plaintiff *pro se*, in her capacity as special administrator of her husband's estate, the pleading was a nullity and void *ab initio*. Defendants added that since the complaint was a nullity, and it was the only complaint that was filed within the two-year statute of limitations for medical negligence actions (735 ILCS 5/13-212(a) (West 2012)), subsequent actions brought by plaintiff after the statute of limitations had expired were time-barred.

¶ 4      Defendants further argued that the complaint should be dismissed with prejudice because the plaintiff failed to comply with section 2-622(a)(1) of the Code (735 ILCS 5/2-622(a)(1) (West 2014)), which requires that a plaintiff alleging medical malpractice file an affidavit stating that she has obtained a statement from a health professional opining that there is a "reasonable and meritorious cause for the filing of such action."

¶ 5      The circuit court ultimately granted the motions to dismiss and entered judgment for the defendants. The court determined that the plaintiff's complaint was a nullity and that she did not establish good cause for failing to comply with section 2-622(a)(1) of the Code. The circuit court upheld its ruling upon reconsideration. This appeal followed. For the reasons set forth below, we reverse and remand for further proceedings.

---

[1]"A venogram is an invasive x-ray procedure involving injection of a dye that highlights the veins in the x-ray film and is performed by a radiologist." *Cox v. Kingsboro Medical Group*, 632 N.Y.S.2d 139, 145 (N.Y. App. Div. 1995). "[C]ardiac tamponade is a condition where the fluid in the pericardial sack compresses the heart limiting its ability to fill with blood and hence, compromising the ability of the heart to pump blood." (Internal quotation marks omitted.) *Webster v. Pacesetter, Inc.*, 171 F. Supp. 2d 1, 3 n.3 (D.C. Cir. 2001).

¶ 6                                     BACKGROUND

¶ 7       On November 21, 2012, plaintiff's decedent, Mr. Byars, was under the care and treatment of the defendants when he died from cardiac tamponade. Plaintiff believed her husband died as a result of negligent medical care and subsequently obtained his medical records to determine whether she could proceed with legal action. Approximately a year after the decedent's death, plaintiff began searching for legal counsel to represent the decedent's estate in a medical negligence action. Plaintiff first consulted with attorney Michael Bucchi, who referred her to attorney David Heyer.

¶ 8       Plaintiff met with Heyer in January 2014 and provided him with the medical records in her possession. She also signed authorization permitting Heyer and his law firm to obtain additional material and documents necessary to evaluate the case.

¶ 9       Nine months later, in October 2014, plaintiff was informed that neither Heyer nor Bucchi would be proceeding with the case. Plaintiff was further advised that the applicable statute of limitations would expire on November 21, 2014, and that if she wished to pursue legal action against any of the potential defendants, suit would have to be filed no later than this date.

¶ 10      After failing to secure legal counsel, plaintiff decided to proceed *pro se* in an effort to meet the applicable statute of limitations. On November 21, 2014, plaintiff successfully petitioned the circuit court to appoint her special administrator of the decedent's estate. That same day, plaintiff filed a *pro se* complaint against defendants seeking damages for the decedent's alleged wrongful death. Plaintiff did not attach an affidavit stating that she was attempting to consult with a health care professional and did not attach a report from a health care professional as required by section 2-622 of the Code. Plaintiff issued summons to the defendants, who were served with process by December 17, 2014.

¶ 11      During that December, plaintiff consulted with attorney Antone D. Smith, who declined the request for representation, but recommended plaintiff to the law firm of Power, Rogers & Smith. Attorney Smith forwarded the complaint and medical records to Power, Rogers & Smith, which subsequently declined representation.

¶ 12      In January 2015, plaintiff met with counsel from the law firm of Kralovec, Jambois & Schwartz. During this period, defendants filed their respective appearances, and the matter was scheduled to be heard before the circuit court for initial case management conference on January 27, 2015. Plaintiff appeared at the case management conference, where the circuit court continued the matter to March 17, for status on plaintiff's appearance through counsel. The circuit court also stayed the defendants' responsive pleading deadline.

¶ 13      At the case management conference held on March 17, 2015, plaintiff again appeared without counsel. The circuit court ordered defendants to file responsive pleadings within 28 days. In mid-March, plaintiff was informed that the Kralovec law firm was declining her request for representation and reminded her of an upcoming court date.

¶ 14      On April 7, 2015, defendant Mercy Hospital & Medical Center filed a motion to dismiss the plaintiff's complaint pursuant to section 2-619 of the Code, based on plaintiff's failure to comply with section 2-622 of the Code. On April 13, 2015, defendants Chicago Heart & Vascular Consultants, Ltd., and Dr. Anil Ranginani filed their motion to dismiss, also based on plaintiff's failure to comply with section 2-622 of the Code. In addition, the defendants argued that the complaint was a nullity and should be dismissed with prejudice because plaintiff had

filed the complaint *pro se*, despite the fact that it set forth causes of action required to be presented in a representative capacity.

¶ 15    The defendants presented their respective motions to the circuit court on April 21, 2015. In deference to the plaintiff's *pro se* status, the circuit court gave plaintiff six weeks to file a response to the motions to dismiss, with the briefing schedule to close on June 16, 2015.

¶ 16    On July 13, 2015, after briefing closed, but before the circuit court ruled on the motions to dismiss, plaintiff's current counsel sought leave to file an appearance on her behalf. The circuit court granted leave, extended the briefing schedule, and continued the hearing date to permit plaintiff's counsel to respond to the pending motions to dismiss.

¶ 17    On July 30, 2015, plaintiff filed her response to the dismissal motions. She appended an affidavit, detailing the nature and extent of her efforts to obtain legal representation prior to filing the *pro se* complaint. Plaintiff acknowledged that she filed her complaint *pro se* in order to avoid the statutory time-bar. She maintained that the nullity rule should not be applied in her case because she "diligently and persistently sought legal representation since 2013." Plaintiff stated that she "continually recognized the limitations of her authority as a non-attorney, and limited her actions to those that were necessary to avoid the statute of limitations."

¶ 18    Plaintiff added that her case should not be dismissed for failing to comply with section 2-622 of the Code because she "presented a record of diligent and persistent effort to secure legal counsel and fulfill all pleading requirements necessary to proceed with a medical negligence lawsuit." Plaintiff requested the circuit court to allow her a reasonable period of additional time within which to file the section 2-622 health professional report.

¶ 19    Defendants filed their respective reply memoranda on August 12, 2015. On August 27, after hearing oral argument from all of the parties, the circuit court issued a written ruling, granting the motions to dismiss with prejudice. The court determined that plaintiff's *pro se* complaint was a nullity and was time-barred. The court also determined there was no good cause shown to grant plaintiff additional time to comply with section 2-622 of the Code. The court subsequently denied plaintiff's motion for reconsideration, and this appeal followed.

¶ 20                                                   ANALYSIS

¶ 21    The first issue on appeal is whether the circuit court erred in granting the defendants' motions to dismiss the plaintiff's complaint, based on its finding that the nullity rule applied to render the complaint a nullity. This is a question of law we review *de novo*. *Pratt-Holdampf v. Trinity Medical Center*, 338 Ill. App. 3d 1079, 1083 (2003). For the reasons that follow, we answer this question in the affirmative and hold that the circuit court erred in applying the nullity rule under the circumstances in this case.

¶ 22    "[T]he nullity rule is a court-imposed consequence for the unauthorized practice of law." *Downtown Disposal Services, Inc. v. City of Chicago*, 407 Ill. App. 3d 822, 830 (2011), *aff'd*, 2012 IL 112040. Section 1 of the Attorney Act provides in relevant part that "No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State." 705 ILCS 205/1 (West 2012). The general rule in Illinois is that legal proceedings in a suit instituted by a person not entitled to practice law in Illinois are a nullity. *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 344 Ill. App. 3d 977, 983-84 (2003). "[W]here a person who is not licensed to practice law in Illinois attempts to represent another party in legal proceedings, [the

nullity] rule permits dismissal of the cause, thereby treating the particular actions taken by that person as a nullity." *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429, 435 (2008). The purpose of the nullity rule is to protect litigants from the mistakes of ignorant individuals and the schemes of the unscrupulous, as well as to protect the court itself in the administration of its proceedings from those lacking the requisite skills. *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 546 (1985).

¶ 23 However, our supreme court has concluded that the nullity rule is not absolute. See *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 31 ("there is no automatic nullity rule"). Instead, the supreme court has directed that circuit courts should consider the facts and circumstances of a case in determining whether to apply the nullity rule. *Id.* Our supreme court has cautioned that, despite the fact that the nullity rule is well established, the consequences of its application are harsh; therefore, the rule should be invoked "only where it fulfills its purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible." *Applebaum*, 231 Ill. 2d at 435.

¶ 24 Here, none of the purposes for which the nullity rule was established are implicated under the facts in this case. Defendants presented no evidence that they were prejudiced by the plaintiff's conduct in filing her complaint *pro se* in order to avoid the statutory time-bar. And there is no evidence that the plaintiff's conduct harmed the decedent's next of kin, the public at large, or the integrity of the court system.

¶ 25 In granting the defendants' motions to dismiss, the circuit court stated that "[t]he nullity rule was intended to protect against just the type of harm that occurred in this case." However, the only harm cited by the court was the plaintiff's conduct in filing her complaint *pro se* in order to meet the applicable statute of limitations and avoid the statutory time-bar. The purpose of a statute of limitations is to " 'require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims.' " *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 32 (quoting *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 132 (1975)). There is no evidence that the plaintiff's delay in filing her *pro se* complaint prejudiced the defendants due to the applicable statute of limitations.

¶ 26 We do not believe that the public at large or the integrity of the court system was harmed or put in jeopardy by this conduct. In this regard, we find persuasive the analysis offered by the Seventh Circuit Court of Appeals in *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010). There, the court examined Illinois state case law pertaining to the nullity rule and suggested that Illinois courts "would distinguish between a filing that merely allows the party to go forward and more general prosecution of the lawsuit." *Id.* In this case, the plaintiff filed her complaint *pro se* merely in order to meet the statute of limitations applicable to her claims so that she could go forward with her case. Plaintiff acknowledged the limitations of her authority as a non-attorney. The actions taken by plaintiff were for the limited purpose of preserving her legal rights and those of the decedent's next of kin and were not performed in the general prosecution of the lawsuit.

¶ 27 In addition, the Seventh Circuit Court of Appeals has determined that the sanction for violating the nullity rule "should be proportioned to the gravity of the violation's consequences." *In re IFC Credit Corp.*, 663 F.3d 315, 321 (7th Cir. 2011). Here, the only consequences of plaintiff filing the complaint *pro se* is that she would meet the statute of

limitations applicable to her claims and the defendants would be required to defend the litigation on the merits. In light of the purposes for which the nullity rule was established and considering plaintiff's demonstrated diligence and persistent efforts to secure legal counsel, we do not believe that these consequences justify application of the sanction of the nullity rule.

¶ 28 Moreover, there is clearly an alternative remedy to dismissal under the nullity rule. An alternative remedy would be to allow the plaintiff's present counsel to amend the complaint to include an affidavit that complies with the requirements of section 2-622 of the Code. The circuit court dismissed the complaint not only based on its finding that the nullity rule applied, but also based on its determination that the plaintiff failed to comply with requirements of section 2-622.

¶ 29 A circuit court has the discretion to determine whether to dismiss an action due to a plaintiff's failure to comply with the requirements of section 2-622 of the Code or, alternatively, to allow amendments to the pleadings in order to bring them in compliance with the statute. *Fox v. Gauto*, 2013 IL App (5th) 110327, ¶ 19. An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008).

¶ 30 Section 2-622 of the Code is a pleading requirement designed to screen and deter frivolous or nonmeritorious medical negligence claims. *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 595 (2006). This section of the Code requires a plaintiff who files a medical malpractice action to have the merits of her case pre-screened by a health professional. *Walter v. Hill*, 156 Ill. App. 3d 708, 710 (1987). However, this section of the Code is "not a substantive defense which may be employed to bar plaintiffs who fail to meet its terms." *Schroeder*, 371 Ill. App. 3d at 595. "Rather, section 2-622 only puts a requirement of meritoriousness on the pending suit." *Walter*, 156 Ill. App. 3d at 710. "Accordingly, the statute should be liberally construed and not mechanically applied to deprive a plaintiff of her substantive rights." *Schroeder*, 371 Ill. App. 3d at 595.

¶ 31 "In Illinois, courts are encouraged to freely and liberally allow the amendment of pleadings." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467 (1992). "Moreover, medical malpractice plaintiffs in particular are to be afforded every opportunity to establish a case, and amendments to the pleadings are to be liberally allowed to enable the action to be heard on the merits, rather than brought to an end because of procedural technicalities." *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417 (2006).

¶ 32 In this case, after the plaintiff retained legal counsel, the circuit court refused to allow plaintiff additional time to amend her complaint to comply with pleading requirements of section 2-622 of the Code. The court determined that the plaintiff had not established "good cause" for failing to comply with section 2-622. We believe the circuit court abused its discretion in finding a lack of good cause to grant plaintiff an extension of time to comply with pleading requirements of section 2-622.

¶ 33 The requirement of "good cause" arises out of Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011), which provides that "[t]he court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." The determination of what constitutes good cause is fact-dependent and rests within the discretion of the circuit court. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007).

¶ 34    In finding a lack of good cause in the instant case, the circuit court accepted and adopted the arguments set forth by the defendants in their motions to dismiss. In their motions, defendants argued that the plaintiff's complaint should be dismissed because she not only failed to submit a health professional's report and affidavit pursuant to section 2-622 when she filed her complaint, but she also failed to file a motion for an extension of time in which to file the section 2-622 report and affidavit. Under section 2-622(a)(2) of the Code, a plaintiff may file an affidavit, along with the complaint, stating that a physician's report could not yet be obtained and that the complaint is being filed anyway because the applicable statute of limitations is about to expire. *Fox*, 2013 IL App (5th) 110327, ¶ 18. Plaintiff would then have 90 days in which to file the required report and affidavit. *Id.*

¶ 35    Although the filing of a motion for an extension of time in which to file the section 2-622 report and affidavit might have been a proper procedural step, we do not believe that the failure to file this motion warranted dismissal of the complaint under the circumstances in this case. Given plaintiff's difficulty in obtaining legal counsel to pursue her claims, it is not unreasonable to assume that she was concerned that the 90-day period would expire long before she was able to secure legal counsel. In light of the purposes for which section 2-622 of the Code was enacted, given Illinois's liberal policy of allowing amendments to pleadings, and considering plaintiff's demonstrated diligence and persistent efforts to secure legal counsel, we believe the circuit court should have granted plaintiff additional time to amend her complaint to comply with the pleading requirements of section 2-622 of the Code. "This course of action would have most fully fulfilled the legislative goal of protecting the substantive rights of the parties while at the same time keeping with the spirit of section 2-622 and its purpose of deterring nonmeritorious litigation." *Walter*, 156 Ill. App. 3d at 711.

¶ 36    Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the matter is remanded for further proceedings.

¶ 37    Reversed and remanded.