2022 IL App (1st) 210668-U

FIFTH DIVISION
Order filed: January 28, 2022

No. 1-21-0668

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| TOMAS GEORGAKOPOULOS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021M1701370 |
| | ) | |
| MATTHEW BLAKE A/K/A MATT BLAKE, BRIDGET | ) | |
| GRAY AND ALL UNKNOWN OCCUPANTS, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Perla Tirado, |
| (Matt Blake and Bridget Gray, Defendants-Appellants.) | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We dismiss in part and affirm in part where: the defendant's arguments regarding possession of a coach house have been rendered moot because the defendants have vacated the premises and a third party has taken possession; the court's finding that the eviction fell within an exception to the Governor's eviction moratorium was not against the manifest weight of the evidence; Gray, through her actions and inactions, waived her right to a jury trial; and the defendants' arguments regarding

monetary damages lack substantive merit; and the defendants' remaining arguments been forfeited by a failure to raise them in the trial court.

¶ 2    Following a bench trial, the defendants, Matthew Blake and Bridget Gray, were ordered evicted and ejected, respectively, from a coach house located on Wilson Avenue in Chicago, Illinois. The defendants appeal, *pro se*, arguing the eviction violated the governor's executive order 2020-72 (Executive Order) (Executive Order 2020-72, 44 Ill. Reg. 18802 (November 30, 2020)), which created a moratorium on evictions; the eviction violated the Residential Landlord and Tenant Ordinance (RLTO) of the city of Chicago (Chicago Municipal Code § 5-12-010 *et seq.* (amended March 31, 2004)); and  they were denied due process as provided by Article IX of the Code of Civil Procedure (Code) (735 ILCS 5/9-101 *et seq.* (West 2020)).  The defendants asks this court to award damages against the plaintiff for moving expenses. For the reasons that follow, we dismiss in part and affirm in part.

¶ 3    On April 16, 2021, the plaintiff filed a verified complaint for eviction and ejectment against the defendants. The complaint alleged the following facts. Blake and the plaintiff entered into a lease for the coach house on September 23, 2020. The lease prohibited occupancy by anyone other than Blake. In violation of the lease, Blake permitted Gray to occupy the premises without the plaintiff's consent. On March 29, 2021, the plaintiff gave Blake a 30-day notice terminating Blake's tenancy effective April 30, 2021. On March 30, 2021, the plaintiff received a voicemail from Gray, in which Gray threatened to slit her wrists and throat and bleed all over the floors making the coach house a "suicide house." In response to the voicemail, the plaintiff issued and served a 10-day notice terminating Blake's tenancy for, *inter alia*, allowing Gray to move into the premises without authorization. The defendants repeatedly called and texted the plaintiff and his wife, making "thinly veiled threats," such as "we found you and know where you really live."

Blake then failed to pay rent for the month of April. Instead, Blake sent a letter to the plaintiff indicating that he had the ability to pay rent but was refusing to do so. A copy of the letter was attached to the complaint and states "I am able to continue paying rent as agreed and until we reach resolution will secure monthly payments in a separate savings account." The letter also stated, "Although not an attorney, Bridget Gray is my tenant rights' advocate and looks forward to speaking with you on how we can best work together to resolve this matter."

¶ 4    The complaint also alleged that on April 2, 2021, Gray called the plaintiff's attorney and held herself out to be Blake's legal representative. In response to this communication, and others, the plaintiff's attorney contacted the Attorney Registration and Disciplinary Commission (ARDC) which opened an investigation into the potential unauthorized practice of law.

¶ 5    Count I of the complaint sought an order of eviction against all defendants and an award of damages against Blake. Count II of the complaint sought an order of ejectment against Gray and all unknown defendants.

¶ 6    On April 23, 2021, *pro se* appearances and jury demands were filed on behalf of both Gray and Blake. Both appearances were filed electronically and bear a date and time stamp of "4/23/2021 1:10 PM." Each appearance sought a 12-person jury.

¶ 7    On April 26, 2021, the plaintiff filed a motion, *inter alia*, to strike Blake's jury demand. The motion alleged that Gray had not appeared in the matter and was engaging in the unauthorized practice of law by representing Blake.

¶ 8    On April 29, 2021, the defendants filed an answer. The defendants admitted Blake signed the lease with the plaintiff. They admitted that Blake allowed Gray to move into the coach house. The defendants admitted Blake received the 30-day notice terminating the tenancy. The defendants

did not deny that Gray left the voicemail but responded with reasons why she left the voicemail. Likewise, the defendants did not deny sending the text message but responded with an allegation that "multiple claims made by [the] plaintiff do not match public records." The defendants alleged that the plaintiff was attempting to disguise his true address. The defendants did not deny receiving the 10-day notice of termination but alleged instead that the notice was in violation of the Chicago Residential Landlord and Tenant Ordinance. (RLTO). In response to the allegation that Blake refused to pay rent, the defendants stated "Defendants deny and did not refuse; however instead promised to secure rent in separate account until dispute resolution." The answer did not include a counterclaim.

¶ 9     Later on April 29, 2021, the circuit court held a hearing on the plaintiff's motion to strike Blake's jury demand. The court stated, "It looks like there's two Jury demands." The plaintiff's attorney responded "Well, my understanding Judge is there's one Jury Demand. In the motion to strike I attached that. It was filed on behalf of Mr. Blake by Mrs. Gray, which is the unauthorized practice of law." Attached to the motion as an exhibit was an e-mail notice of filing from the "Odyssey" system which indicated that Blake's jury demand had been filed by "Bridget Gray." After the plaintiff presented his arguments, Gray and Blake addressed the court. During their argument, the following colloquy occurred between Gray and the court:

"THE COURT: Anything else?

DEFENDANT GRAY: Your Honor, if I can just respond briefly to the ARDC.

THE COURT: Let me ask you this question, Ms. Gray: Are you licensed to practice law in Illinois?

DEFENDANT GRAY: No, and I did not ever intend --

THE COURT: So you're not licensed to practice law in Illinois?

DEFENDANT GRAY: No. And I had been clear with Jose Zamora [the plaintiff's previous attorney] previous to that on five separate phone calls. So, I have spoken with the ARDC. The letter that I received was not about criminal charges."

¶ 10    After entertaining argument on the plaintiff's motion, the circuit court entered an order, granting the motion in part and striking Blake's jury demand. The circuit court did not strike Gray's jury demand. The matter was continued to May 6, 2021, "for bench trial."

¶ 11    On May 6, 2021, the defendants requested a continuance, which the court granted. Gray did not raise the issue of her jury demand.

¶ 12    On May 10, 2021, the circuit court commenced a bench trial on the plaintiff's complaint. The defendants appeared *pro* se. Before starting the trial, the court asked the defendants if they had anything they wanted to say. The following colloquy occurred:

"MS. GRAY: Well, Your Honor, we are actually prepared for judgment without trial. We are prepared to request a Summary Judgment.

We don't think it's the Court's best use of time in order proceeding with this trial. We believe Mr. Georgakopoulos has perjured himself.

THE COURT: Okay. I'm going to stop you right there.

This motion for Summary Judgment, I know you are not an attorney, but this is not applicable in this case. Okay. If you file Motion for Summary Judgment you have to file a Written Motion with legal authority. So that's not going to happen today. We are going to have a trial.

It's your choice if you decide to put on testimony or not, that's one thing. But we are going to have a hearing, okay, because it is based on an exception to the Governor's Moratorium.

MS. GRAY: Okay.

THE COURT: Okay.

MS. GRAY: We are prepared for that."

¶ 13    During opening statements, the plaintiff asserted that the evidence would show that the defendants posed a danger to the health and safety of "anyone related to the premises," and therefore, an emergency eviction order was appropriate. Gray stated that the defendants believed the plaintiff had "provoked us in perjury [*sic*] himself and misled his attorneys in order to bring us to eviction outside the Governor's order." Blake did not make an opening statement.

¶ 14    The plaintiff called Blake as an adverse witness. Blake admitted that his lease for the premises ended on April 30, 2021. He also admitted that he received a nonrenewal notice on March 30 and a ten-day notice on April 1, 2021, which required any residents not specified in the lease to move out in ten days. Blake admitted that Gray was still living in the coach house. He also admitted that he had not paid rent for the months of April and May, even though he had the funds to do so. Blake added "But I notated it's in the savings account until we figure this out."

¶ 15    The plaintiff testified that, after he asked Blake about a "walk through" on March 24, 2021, Blake "barraged" him with phone calls. The plaintiff then decided not to renew Blake's lease. He testified that he received the "threatening" voicemail from Gray that had been included in the complaint. He also testified that he received the text that indicated the defendants knew where he lived. He stated that he felt threatened by those conversations and other communications with the

defendants and that he believed their continued occupancy posed a risk to the health and safety of himself and anyone else at the property.

¶ 16    Michelle Georgakopoulos, the plaintiff's wife, also testified. Her description of the communications between her, her husband, and the defendants was consistent with the plaintiff's testimony.

¶ 17    The plaintiff called Bridget Gray as a witness. Gray admitted leaving the voicemail. Gray also admitted receiving and answering the complaint. Gray admitted that, in response to the complaint, she did not deny paragraph 28 which indicated "Plaintiff believes that defendants continued occupancy of the building constitutes a health and safety risk of others."

¶ 18    When asked if she had anything to offer in response to the plaintiff's questions, Gray responded:

> "Simply we did respond in our answer that at this point we were simply trying to understand what was going on here and why these people felt the need to suddenly attack us in this way."

¶ 19    The plaintiff rested, and the court asked the defendants if they wished to testify. Gray responded, "I don't believe we are interested in testify [*sic*] Your Honor." However, she added that the ARDC complaint against her had been closed. Blake responded:

> "Yeah.
>
> I just don't – I don't understand this. We have – what we have here now is a – prior to March 21st there was zero issues, I paid early, I shoveled snow, I did all this stuff.
>
> I even said, okay fine we'll put an extra person on the lease. And he says, okay. And a walk through tells me meth. I just think this is absurd. You got people out there who

are thousands and thousands and thousands of dollars who owe rent. You got witch craft, gunshot.

There is no imminent threat. Also stated in an Affidavit by our neighbor that clearly states there is no imminent threat."

¶ 20 The court heard closing arguments. The plaintiff argued that he was afraid to go to his property to do maintenance because of the defendants' threats. He requested a judgment instanter for immediate enforcement by the sheriff and a monetary judgement in an amount equal to two months unpaid rent and court costs. Gray argued that there was no good faith effort to resolve the matter before bringing it to court. Blake argued the following: "We never had to come here. This is absurd. That is all your honor."

¶ 21 Following argument, the circuit court entered an order for eviction effective May 15, 2021. The court held that, because Gray had made threats to herself or other people, the eviction should be treated as an exception to the Executive Order. The court noted:

"And the fact that because they choose not to renew, that then brought on these multiple calls and text messages and harassment, basically. The Court finds that all very troubling."

¶ 22 The court held that a money judgment would be subject to the Executive Order and continued the matter for a hearing on the issue. The court's written order was prepared on a form provided by the Illinois Supreme Court to which the court appended a typed page, prepared by the plaintiff's attorney, which included a finding that "This case involves threats made to the Plaintiff and his family." The appended page ordered, *inter alia*, that the Cook County Sheriff enforce the

order despite the Executive Order because "Defendants continued occupancy of the subject premises constitutes a direct threat to the health and safety of others."

¶ 23   On June 3, 2021, the sheriff enforced the eviction order and the plaintiff regained possession. On June 9, 2021, following a hearing, the circuit court entered judgment in the uncontested amount of $3,996.75 against Blake, which included two months unpaid rent, filing fees, and costs of service. This timely appeal followed.

¶ 24   On appeal, the defendants raise three arguments: (1) the court erred in its interpretation of the Executive Order on evictions; (2) the court improperly applied the RLTO; and (3) the court violated the defendants' due process rights according to the eviction procedures set forth in Article IX of the Code. The plaintiff argues that: (1) the appeal is moot because the trial court issued an order for eviction and ejectment and the defendants have been evicted from the premises; (2) the defendants' arguments related to the Executive Order, the RLTO, and the Code are forfeited because they failed to raise them in the trial court; and (3) the defendants forfeited their arguments on appeal by failing to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) and their brief should be stricken.

¶ 25   We turn first to the plaintiff's argument that the appeal is moot with respect to the issue of possession of the coach house.

¶ 26   The question of whether a case is moot is a matter of law that we review *de novo*. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 44. "A case must remain a legal controversy from the time it is filed in the appellate court until the moment of disposition." *Id.* ¶ 45 (citing *Davis v. City of Country Club Hills*, 2013 IL App (1st) 123634, ¶ 10). It is well-established that a case may become moot when, during the pendency of the appeal, events occur

which render it impossible to grant effectual relief. *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 124-25 (1996). For example, an appeal is moot if a specific property, the possession of which is sought on appeal, has been conveyed to third parties. See *Circle Management, LLC v. Oliver*, 378 Ill. App. 3d 601, 607 (2007) (holding that a forcible entry and detainer action was moot where the trial court had entered a possession order but applying the public interest exception to the mootness doctrine.) Moreover, where a lease has expired by its own terms before an appeal is decided the issue of possession becomes moot. *Poulos v. Reda*, 165 Ill. App. 3d 793, 798 (1987).

¶ 27    The plaintiff argues that it is impossible to grant the defendants relief on the issue of the eviction order because, as the defendants admit in their brief, the defendants have been evicted from the coach house. See *Circle Management*, 378 Ill. App. 3d at 607. In their opening brief, the defendants do not request restoration of possession, arguing instead that they are entitled to damages from the plaintiff for moving expenses. In their reply brief, the defendants argue that the issue of possession is not moot because the money judgment is "directly dependent" on the eviction order. The defendants also argue in reply "many aspects of this case impact the public interest further rendering not moot." However, we find these generalized arguments unsupported by citation to authority insufficient to invoke an exception to the mootness doctrine. Accordingly, we dismiss, in part, the appeal to the extent that it involves possession of the subject premises.

¶ 28    The defendants raise three issues on appeal; (1) violation of the Executive Order on evictions; (2) violations of the RLTO; and (3) denial of due process under Article IX of the Code. We will address these issues in turn.

¶ 29    First, with regard to the Executive Order. The defendants argued that the plaintiff had perjured himself and misled his own attorneys to improperly bring this case within an exception to the Executive Order. The plaintiff argued that this case should proceed as an exception to the Executive Order because the defendants posed a risk to the health and safety of others on the property. Section 2 of the Executive Order provided that no person may commence a residential eviction action against a tenant under Article IX of the Code unless "that person poses a direct threat to the health and safety of other tenants or an immediate and severe risk to property." Executive Order 2020-72 (44 Ill. Reg. 18802 (November 30, 2020)). The plaintiff presented evidence that Gray made threats to harm herself and damage the property by "bleeding out" and making the coach house a "suicide house." The plaintiff also presented evidence that the defendants made phone calls he found harassing and threatening including veiled threats such as "we know where you live." The trial court found the defendants behavior "very troubling," and made a written finding that the case involved threats made to the plaintiff and the defendants' continued occupancy constituted a "direct threat" to the safety of others. Based upon the record before us, we conclude that the circuit court's finding that the defendants' behavior brought them within the exception to the Executive Order was not against the manifest weight of the evidence. See *Teton, Tack and Feed, LLC v. Jimenez*, 2016 IL App (1st) 150584, ¶ 11 (Appeals arising from a final judgment in an action under Article IX of the Code are reviewed using the manifest-weight -of-the-evidence standard.)

¶ 30    With regard to any other arguments the defendants may have based on the Executive Order, we find that they are forfeited because the defendants failed to raise them at trial and adequately argue them on appeal. Issues not raised with the trial court are forfeited on review. See *Forest*

*Preserve District of Cook County v. Royalty Properties, LLC*, 2018 IL App (1st) 181323, ¶ 38. The purpose of the forfeiture rule is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain reversal through his or her own inaction. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Moreover, it is impossible to accurately determine what other issues based upon the Executive Order the defendants intended to raise because their arguments are vague and unsupported by citation to authority. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. We find the defendants' generalized references to the Executive Order in their opening brief are insufficient to raise any arguments before this court other than the moratorium issue. See Il. S. Ct. R. 341(h)(7) (eff, Oct. 1, 2020). Therefore, we reject the defendants' arguments based on the Executive Order.

¶ 31 The defendants also argue that the plaintiff violated the RLTO by: serving a 10-day notice that failed to provide for the right to cure any lease violation; failing to provide landlord/manager information on the lease for the subject premises; providing an "inaccurate" receipt for a security deposit; refusing to provide a "legitimate" reason for demanding a walkthrough of the subject premises; and retaliating against Blake for his taking offense to "meth" comments. However, the defendants did not properly raise any of these alleged violations of the RLTO as affirmative defenses during trial. The failure to raise such affirmative defenses below results in their forfeiture on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Therefore, we conclude that the defendants' arguments based upon violations of the RLTO are forfeited.

¶ 32 In addition to asserting alleged violations of the RLTO for the first time on appeal, the defendants also argue for the first time before this court that the RLTO provides monetary remedies

in favor of a tenant for a landlord's violations of the ordinance. In their brief, the defendants request an award of $35,000 in damages.

¶ 33 Section 2-608 of the Code provides that any claim by a defendant against a plaintiff may be asserted as a counterclaim which must be pleaded in the same manner and with the same particularity as a complaint and shall be complete in itself. 735 ILCS 5/2-608 (West 2020). Blake never pled a counterclaim against the plaintiff seeking damages for his alleged violations of the RLTO. A defendant is not entitled to any award of damages in the absence to a pleading raising the claim. See *Clay v. Pepper Construction Company,* 205 Ill. App. 3d 1018, 1022 (1990). Consequently, the defendants are not entitled to any award of damages by this court.

¶ 34 Finally, the defendants raise four issues related to the application of Article IX of the Code. We address each argument in turn.

¶ 35 First, the defendants argue that the plaintiff failed to comply with the requirements of section 9-106.2 of the Code (735 ILCS 5/9-106.2 (West 2020)). The defendants' argument in this regard is misplaced. Section 9-106.2 creates an affirmative defense for certain victims of domestic violence in eviction actions. Initially, we note that there was no evidence presented that would cause this case to fall within the affirmative defense created by this section. More importantly, the defendants did not raise this as an affirmative defense at the trial level, and therefore, it is waived on appeal. See *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 51.

¶ 36 Second, the defendants argue that, because section 9-108 of the Code (735 ILCS 5/9-108 (2020) guarantees the right to a jury trial, the trial court erred in striking Blake's jury demand and conducting a bench trial. The circuit court held that Blake's jury demand was invalid because its filing constituted the unauthorized practice of law by Gray. See, *e.g.*, *Holloway v. Chicago Heart*

& *Vascular Consultants, Ltd.*, 2017 IL App (1st) 160315, ¶ 22. Generally, under the "nullity rule" a filing by a person not authorized to practice law is considered a nullity. *Id.* The defendants have asserted no argument on appeal as to why the trial court erred in striking Blake's jury demand as the product of the unauthorized practice of law by Gray, and we find no basis in the record to disturb the trial court's decision on that issue.

¶ 37 As to Gray's jury demand, we find that she has waived any argument that the court erroneously conducted a bench trial in derogation of her jury demand. A party may, by his or her conduct, waived a demand for a jury trial. *Installco Inc. v. Whiting Corp.,* 336 Ill. App. 3d 776, 786 There is no question that the circuit court conducted a bench trial despite Gray's demand for a jury trial. However, Gray was given the chance to speak at the hearing on the plaintiff's motion to strike Blake's jury demand. At that time, Gray did not attempt to correct the court's order setting the matter for a bench trial, address any confusion created by the plaintiff's counsel's erroneous statement regarding the number of jury demands, or assert her separate demand for a jury trial. The matter was set for trial before a different judge, and Gray was again given a chance to speak. Gray did not, at that time, assert her demand for a jury trial, stating instead that she believed no trial was necessary. When informed that a trial would occur, Gray responded "we are prepared for that," but did not assert her demand for a jury trial. We conclude that, by allowing the case to proceed to a bench trial without asserting her right to a jury, Gray forfeited her right to argue that the procedure deprived her of right to a jury trial. See *Installco*, 336 Ill. App. 3d at 786-87 ("[A litigant] cannot sit by silently, allowing a full bench trial to proceed and then, unhappy with the result, argue on appeal that the matter should have been heard by a jury.") Therefore, we find that Gray, by her actions and inactions, waived her right to a jury trial.

¶ 38    Third, the defendants argued in their opening brief that the trial court erred when it allowed the plaintiff's attorney to modify the standardized from order for evictions in violation of section 109.6 of the Code (735 ILCS 5/9-109.6 (West 2020)). The plaintiff argues that the circuit court used an authorized form, and that additional information was necessary to explain why the eviction fell outside the Executive Order. The defendants concede this point in their reply brief, stating "Defendants do not argue wrong form eviction order used." Section 109.6 mandates the use of a standardized form, as determined by the supreme court, for all evictions in the State. The trial court did not err when it appended a page with more detailed findings of fact and a detailed order to the standardized form.

¶ 39    Fourth, the defendants argue that the circuit court erred because it failed to follow the emergency housing eviction procedures contained in sections 9-118, 9-119 or 9-120 of the Code (735 ILCS 5/9-118, 9-119, 9-120 (West 2020)). Section 9-118 provides a process for plaintiffs to seek emergency proceedings when it is alleged that the leased premises are being used for, *inter alia*, the unlawful possession of cannabis, methamphetamine, narcotics, controlled substances or certain crimes of violence including murder, attempted murder, kidnapping or sexual assault. Section 9-119 provides a process for plaintiffs to use when the leased premises are subsidized and the occupant refuses to allow inspection. Section 9-120 provides a procedure to void a lease and bring an eviction action when the leased premises have been used to facilitate the commission of a felony or Class A misdemeanor.  The plaintiff's complaint did not allege any acts by defendant's falling within the parameters of section 9-118, 9-119 or 9-120, and the record fails to reflect that the plaintiff sought to avail himself of the procedures set forth in those sections. Therefore, we find the procedures in these sections irrelevant to the issues in this case. To the extent that the

defendants are arguing that these are the only procedures available to bring an "emergency" eviction, we disagree. The plaintiff and the circuit court may have used the word emergency to describe the proceedings and the exception to the Executive Order, but simply using the word did not invoke the requirements of sections 9-118, 9-119, or 9-120. Accordingly we reject the defendants' arguments on this issue.

¶ 40    In their reply brief, the defendants argue, without citation, that "Multiple rejection of SRL [self-represented litigants] arguments and the expedited nature of the case did not allow Defendants the opportunity to litigate fully the arguments we now bring on appeal." The defendants were given ample opportunity to raise their arguments in the circuit court. The defendants filed an answer to the plaintiff's complaint. They were present at trial, and given the opportunity to speak, testify, and present witnesses. It is well-established that self-represented litigants are held to the same standards as one represented by counsel. See *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009). We therefore reject the defendants' contention that they should be held to a lower standard because they elected to represent themselves in these proceedings.

¶ 41    For these reasons, we dismiss that portion of this appeal addressed to the circuit court's order of eviction and affirm the judgment of the circuit court of Cook County in all other respects.

¶ 42    Dismissed in part and affirmed in part.